**STATE v. OLIPHANT**

[228 N.C. App. 692 (2013)]

———————————

STATE OF NORTH CAROLINA
v.
JOSHUA K. OLIPHANT AND DERRICK L. HAMILTON, Defendants

No. COA12-1219

Filed 6 August 2013

1. **Robbery—with a dangerous weapon—jury instructions—referring to defendants collectively—no plain error**

The trial court did not commit plain error in its introductory remarks and throughout much of the charge to the jury in a robbery with a dangerous weapon case by referring to defendant Oliphant and defendant Hamilton collectively as "defendants" and, thereby, suggesting that the jury should convict the defendants collectively. Assuming, without deciding, that the trial court erred by failing to give a separate mandate or separate instruction clarifying that the guilt or innocence of one defendant is not dependent upon the guilt or innocence of a codefendant, the error was not so fundamental that it had a probable impact on the jury.

STATE v. OLIPHANT

[228 N.C. App. 692 (2013)]

2.  **Robbery—with a dangerous weapon—conspiracy—sufficient evidence**

The trial court did not err by denying defendants' individual motions to dismiss the charge of conspiracy to commit robbery with a dangerous weapon. There was sufficient evidence to show the existence of a mutual, implied understanding between defendants to commit the crime of armed robbery.

3.  **Evidence—witness examination—probation report—no personal knowledge**

The trial court did not err in a robbery with a dangerous weapon case by not allowing defendant to examine the victim concerning the contents of a probation violation report that she had not previously seen.

Appeal by defendants from judgments entered 23 April 2012 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 27 February 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Stuart M. (Jeb) Saunders, for the State versus Joshua Kareem Oliphant.*

*Attorney General Roy Cooper, by Assistant Attorney General M. Lynne Weaver, for the State versus Derrick Lorenzo Hamilton.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Paul M. Green, for defendant-appellant Oliphant.*

*James N. Freeman, Jr., for defendant-appellant Hamilton.*

BRYANT, Judge.

Even assuming the trial court committed instructional error, upon review of the entire record, we cannot conclude that the alleged instructional error had a probable impact on the jury's decision to convict both defendants and, therefore, find no plain error. Where there was sufficient evidence to support the submission of the charge of conspiracy to commit robbery with a dangerous weapon to the jury as to each defendant, the trial court did not err in denying defendants' individual motions to dismiss. And, where the trial court refused to allow the examination of the victim regarding a probation violation report she had not seen, we find no error.

On 27 June 2011 just after 1:00 a.m., Tiawauna Threatt – the victim – had just left a friend's house and was walking along Hildebrand Street near its intersection with Beatty's Ford Road in Mecklenburg County. As she talked on her cell phone, the victim was approached from behind by two males. One of the men – "the light-skinned [one] with wide frame glasses" – pulled out a black revolver, pointed it at her, and demanded her pocketbook, which she handed over. The second man – "dark-skinned" and wearing a "doo rag" – reached for her cell phone, which she gave to him. The victim then ran towards Beatty's Ford Road where she waived down a Charlotte-Mecklenburg police officer who was on patrol. She gave a statement and a physical description of each of the men. Within twenty minutes and five blocks of the location of the robbery, law enforcement officers detained defendants Joshua Oliphant and Derrick Hamilton who matched the descriptions given by the victim. The officers presented defendants to the victim as part of a "show-up" identification; the victim identified both defendants as the men who had just robbed her.

Also, soon after the victim's descriptions of the two men were broadcast to other law enforcement officers in the vicinity, a vehicle was found abandoned at the end of Hildebrand Street, less than a quarter of a mile from the place of the robbery. The vehicle was parked in the traffic lane; its lights were on; its engine was running; and its driver side door was open. The vehicle was registered to defendant Oliphant, and defendant Oliphant's wallet along with mail addressed to him was found on the vehicle's front seat.

Arrest warrants were issued and served immediately on defendants Oliphant and Hamilton charging each with robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. Defendants were each indicted shortly thereafter on charges of robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon.

A jury trial was commenced during the 16 April 2012 Criminal Session of Mecklenburg County Superior Court, the Honorable W. Robert Bell, Judge presiding. Following the presentation of evidence, the jury returned verdicts of guilty as to each defendant on the charges of robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. As to defendant Oliphant, who had attained a prior felony record level of five, the trial court entered a consolidated judgment in accordance with the jury verdicts and imposed an active term of 111 to 146 months. As to defendant Hamilton, who had attained

**STATE v. OLIPHANT**

[228 N.C. App. 692 (2013)]

a prior felony record level of four, the trial court imposed an active term of 97 to 129 months. Defendants appeal.

---

On appeal, defendants Oliphant and Hamilton raise the following issues: (I) whether the trial court's instructions to the jury encouraged a determination of defendants' guilt collectively rather than individually; and (II) whether the trial court erred in failing to dismiss the conspiracy charges. Defendant Hamilton separately raises an issue (III) as to whether the trial court erred in not allowing him to question a witness regarding a probation violation.

*I*

**[1]** Neither defendant Oliphant nor defendant Hamilton objected to the trial court's instructions to the jury. At the completion of the charge to the jury the trial court asked the following question:

> THE COURT: Outside the presence of the jury, are there any requests for additions, changes corrections given by the State?
>
> [The State]: None from the State, Your Honor.
>
> THE COURT: Defendant, [defense counsel for Oliphant]?
>
> [Defense counsel for Oliphant]: Not for [defendant Oliphant], Your Honor.
>
> THE COURT: For [defendant Hamilton]?
>
> [Defense counsel for Hamilton]: Nothing for [defendant Hamilton], Judge.

Now, on appeal, defendants Oliphant and Hamilton assert that the trial court committed plain error in its instructions to the jury because its instructions permitted the jury to think that it should determine defendants' guilt collectively rather than individually. We disagree.

### Plain Error Review

> The plain error rule ... is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where the error is grave error which amounts to

> a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Lawrence,* 365 N.C. 506, 516-17, 723 S.E.2d 326, 333 (2012) (citation, quotations, and brackets omitted).

> The adoption of the 'plain error' rule does not mean that every failure to give a proper instruction mandates reversal regardless of the defendant's failure to object at trial. To hold so would negate [N.C. R. App. P. 10(a)(2),[1, 2]] which is not the intent or purpose of the 'plain error' rule.

*State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citing *United States v. Ostendorff,* 371 F.2d 729 (4th Cir. 1967)). "The purpose of Rule [10(a)(2)] is to encourage the parties to inform the trial court of errors in its instructions so that it can correct the instructions and cure any potential errors before the jury deliberates on the case and thereby eliminate the need for a new trial." *State v. Collins,* 334 N.C. 54, 66, 431 S.E.2d 188, 195 (1993) (citation omitted).

For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. *See Lawrence,* 365 N.C. at 518, 723 S.E.2d at 334 (citing *Odom,* 307 N.C. at 660, 300 S.E.2d at 378). "To show that an error was fundamental, a defendant must establish prejudice — that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (citations and quotation marks omitted); *compare State v. Ballard,* 193 N.C. App. 551, 668 S.E.2d 78 (2008) (where the defendant objected to the jury instructions and on appeal had the burden to establish that "in light of the entire charge" the jury was misled).

---

1. Rule 10 of the Rules of Appellate Procedure, which was originally referenced in *State v. Odom,* 307 N.C. 655, 300 S.E.2d 378 (1983), as Rule 10(b)(2), addresses the preservation of challenges to the trial courts jury instructions for purposes of appellate review is currently contained in Rule 10(a)(2) (2013).

2. N.C. R. App. P. 10 (a)(2). *"Jury Instructions.* A party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires to consider its verdict, stating distinctly that to which objection is made and the grounds of the objection; provided that opportunity was given to the party to make the objection out of the hearing of the jury, and, on request of any party, out of the presence of the jury."

When the plain error rule is applied, it "is to be applied cautiously and only in the exceptional case[.] [In fact,] the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (citation omitted); *accord Henderson v. Kibbe*, 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212 (1977) ("It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.").

Here, the trial court gave the following instructions:

> The defendants have entered pleas of not guilty. The fact that they have been charged is not evidence of guilt. Under our system of justice, when a defendant pleads not guilty, he is not required to prove his innocence, but he is presumed to be innocent. This presumption remains with the defendant throughout the trial until the jury selected to hear the case is convinced from the both the facts and the law beyond a reasonable doubt of the guilt of the defendant.
>
> . . .
>
> The defendants in this case have not testified. The law gives the defendants this privilege. This same law assures the defendants that their decision not to testify creates no presumption against them. Therefore, the silence of the defendants is not to influence your decision in any way.
>
> . . .
>
> The defendants have been charged with robbery with a firearm, which is the taking and carrying away the personal of [sic] property of another from [sic] person or in her presence without her consent by endangering or threatening that person's life with a firearm; the taker knowing that he is not entitled to take the property and intending to deprive another of its use permanently. The instructions are identical for both defendants.
>
> . . .
>
> For you to find the defendant guilty of this offense, the State must prove seven things beyond a reasonable doubt:
>
> First, that the defendant took property from the person of another or in her presence.

Second, that the defendant carried away the property.

Third, that the person did not voluntarily consent to the taking and carrying away of the property.

Fourth, that the defendant knew that he was not entitled to take the property.

Fifth, that at the time of taking, the defendant intended to deprive that person of its use permanently.

Sixth, that the defendant had a firearm in his possession at the time that he obtained the property, or that it reasonably appeared to the victim that a firearm was being used, in which case you may infer that said instrument was what the defendant's conduct represented it to be.

Seventh, that the defendant obtained the property by endangering or threatening the life of that person with the firearm.

If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant, acting either by himself or acting together with another person, had in his possession a firearm and took and carried away property from the person or in the presence of a person without her voluntarily [sic] consent by endangering or threatening her life with the use or threatened use of a firearm, the defendant knowing that he was not entitled to take the property and intending to deprive that person of its use permanently, it would be your duty to render a verdict of guilty.

. . .

The defendants have also been charged with felonious conspiracy with each other to commit robbery with a firearm. For you to find the defendant guilty of this offense, the State must prove three things beyond a reasonable doubt.

First, that Joshua Oliphant and Derrick Hamilton entered into an agreement.

Second, that the agreement was to commit robbery with a firearm.

. . .

> Third, that Joshua Oliphant and Derrick Hamilton intended that the agreement be carried out at the time that it was made.

. . .

> If you do not so find or if you have reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

When requested by the trial court to point out any "additions, changes, corrections" to the instructions just given, neither defendant Oliphant nor defendant Hamilton objected to the instructions as given or noted any reason for the trial court to make changes to the jury instructions.

Defendants now assert that in the trial court's introductory remarks and throughout much of the charge to the jury, the court referred to defendant Oliphant and defendant Hamilton collectively as "defendants" and, thereby, suggested that the jury *should* convict the defendants collectively. We do not believe that any error found in the trial court's instructions rises to the level of plain error.

Our courts have indicated that when more than one defendant is tried jointly on the same charge, the jury is to determine the guilt or innocence of each defendant without regard to the guilt or innocence of the codefendant. *See State v. Lockamy*, 31 N.C. App. 713, 230 S.E.2d 565 (1976). "This Court has repeatedly held that, when two or more defendants are jointly tried for the same offense, a charge which is susceptible to the construction that the jury *should* convict all if it finds one guilty is reversible error." *Id.* at 716, 230 S.E.2d at 567 (emphasis added). However, it is not necessary to give wholly separate instructions as to each defendant when the charges and the evidence as to each defendant are identical, provided that "the trial judge [] give[s] either a separate final mandate as to each defendant or otherwise clearly instruct[s] the jury that the guilt or innocence of one defendant is not dependent upon the guilt of innocence of a codefendant." *Id.* at 716, 230 S.E.2d at 568.

Defendants cite *Lockamy*, among other cases, in urging this Court to find plain error in the jury instructions as given by the trial court in this case. In *Lockamy*, our Court granted the defendants a new trial when it found the jury instructions were susceptible to the interpretation that the jury must find either or both defendants guilty or both defendants not guilty. 31 N.C. App. 713, 230 S.E.2d 565. *Compare State v. Tomblin,*

276 N.C. 273, 171 S.E.2d 901 (1970) (although portions of the jury instruc-
tions were susceptible to the interpretation that all of the defendants
should be found guilty upon a determination that any one committed the
charged acts, taken as a whole the instructions did not mislead the jury
and represented a fair and accurate presentation of the law).

In *Tomblin*, the defendant excepted to the instructions in a trial
involving three codefendants, asserting that error was committed by the
trial court in its instructions to the jury, on the grounds that the instruc-
tions were subject to a construction that the jury should convict all of
the defendants even if only one was guilty. The trial court's instruction
to the *Tomblin* jury included the following: "Now, I want to make it clear
— and crystal clear — that you're trying each of these defendants — that
while we are trying them together each are charged separately — and
you are trying them separately." *Id.* at 277, 171 S.E.2d at 904. The chal-
lenged portion of the jury instructions relating to the charge of rape
reads as follows:

> 'Now, members of the jury, on the charge of rape, the court
> charges you that if you are satisfied from the evidence and
> beyond a reasonable doubt that either one or all of these
> defendants had carnal knowledge, had sexual intercourse,
> forcibly and against the will of [the victim] on this occa-
> sion, that is, if either of these or all of these had carnal
> knowledge of [the victim] without her consent and against
> her will . . . it would be your duty to return a verdict of
> guilty of rape as charged in the bill of indictment . . . .
> (Exception No. 14)

*Id.* at 275, 171 S.E.2d at 902. The Court acknowledged that standing
alone, the "ambiguity could not be condoned"; however, it went on
to reason that when considered in the context of the jury charge as a
whole, the trial court's instructions provided a fair and correct presenta-
tion of the law and thus, no grounds for reversal. *Id.* at 276-77, 171 S.E.2d
at 903-04. The *Tomblin* Court also considered a challenge to the follow-
ing jury charge regarding kidnapping:

> 'Now, members of the jury, as to the charge of kidnapping
> the court charges you that if you are satisfied from the evi-
> dence and beyond a reasonable doubt that these defen-
> dants, either of them, one of them, two of them, or three of
> them, considering each man's case individually and sepa-
> rately, that he, or they, unlawfully and wilfully took and
> carried away this girl, [the victim], by force and against

her will, then the court charges you that he or they would be guilty of kidnapping.

'* * *

'So, the court charges you as to this matter of kidnapping that if you are satisfied from the evidence and beyond a reasonable doubt that these defendants, either of them or one of them, or two of them, or all three, unlawfully and wilfully—and it is against the law to kidnap a person—that is, if they deliberately and with a purpose put [the victim] in fear of her life or in fear of great bodily harm, and in this matter forced her to go to these places, then the court charges you that it would be equivalent to actual force and that it would be your duty to return a verdict of guilty of kidnapping as charged in the bill of indictment as to the defendant, or the defendants.'

*Id.* at 275-76, 171 S.E.2d at 902-03. The Court noted that while the kidnapping charge "does not reflect the clarity of thought and conciseness of statement which is desirable in a judicial mandate to the jury[,]" the Court did not think the jury was confused by the instruction. *Id.* at 276, 171 S.E.2d at 903 (quotations omitted).

In the instant case, we review and analyze defendant's challenge to the trial court's instructions for plain error, a difficult and demanding burden for defendants to meet. *See Lawrence*, 365 N.C. 506, 723 S.E.2d 326 (reversing this Court when it applied a lesser burden to the defendant on plain error review, one that only required the defendant to show "that such error was likely, in light of the entire charge, to mislead the jury," and clarifying that on plain error review "a defendant must establish prejudice – that, after examination of the entire record, the error had a probable impact on the jury's finding that defendant was guilty").

Here, the trial court referred to defendants Oliphant and Hamilton jointly during the jury charge when observing that both defendants entered pleas of not guilty and that neither defendant chose to present evidence. At the outset of its instruction on charges of robbery with a firearm and felonious conspiracy to commit robbery with a firearm, the trial court stated that "[t]he instructions are identical for both defendants." Following this, the trial court's instruction referenced an individual defendant: "If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant, acting either by himself or acting together with another person . . . ."

We are aware of defendants' argument that these instructions were erroneous as the trial court failed to give a separate mandate as to each defendant or a separate instruction clarifying "that the guilt or innocence of one defendant is not dependent upon the guilt or innocence of a codefendant." *Lockamy*, 31 N.C. App. at 716, 230 S.E.2d at 568. However, assuming, without deciding, that the trial court erred by failing to give a separate mandate or separate instruction, per *Lockamy*, we are unable to conclude that the error was fundamental, that it had a probable impact on the jury. *See Lawrence*, 365 N.C. at 516-17, 723 S.E.2d at 333. Neither can we say it is one that affects the "fairness, integrity or public reputation of judicial proceedings[.]" *Id.* In reaching this conclusion, we examine the entire record as required for plain error review.

We note that the crux of the defense revolved around misidentification as opposed to assertions that one defendant was guilty and another was not. Given the evidence before the jury, there is no reasonable probability that the outcome would have been different had the jury been explicitly instructed in accordance with *Lockamy*.

The victim of the robbery faced the men who robbed her at gunpoint of her purse and cellphone, as they were standing within arm's reach of her in a well-lit area. She immediately flagged down a police officer and gave a description of the two men who had just robbed her. Two men meeting the description given were detained shortly thereafter, identified in a show-up by the victim, and again identified in court. Defendant Oliphant's car was found a short distance from the location of the robbery, in the street with the driver's door open, the lights on, and the engine running.

There was substantial evidence before the trial court of the guilt of each defendant. We are not persuaded that the strength of the evidence as to each defendant varied or that there is any likelihood that the jury would have found one defendant guilty while acquitting the other. Therefore, even if we assume *arguendo* that the trial court's jury charge was susceptible to the construction that the jury should convict both defendants if they found that either defendant committed the offense, defendant Oliphant and defendant Hamilton have failed to establish that based on a review of the entire record, the instructional error had a probable impact on the jury's finding that each defendant was guilty. Accordingly, this argument is overruled.

## II

**[2]** Defendant Oliphant and defendant Hamilton argue that the trial court erred by denying their individual motions to dismiss the charge of

conspiracy to commit robbery with a dangerous weapon. Specifically, defendants contend that the evidence failed to establish an agreement prior to the commission of the robbery and an agreement to use a firearm. We disagree.

> In ruling on a motion to dismiss for insufficiency of the evidence, the trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*State v. Rouse*, 198 N.C. App. 378, 381, 679 S.E.2d 520, 523 (2009) (citation and quotations omitted). "If, viewed in the light most favorable to the State, the evidence is such that a jury could reasonably infer that defendant is guilty, the motion must be denied." *State v. Woodard*, ___ N.C. App. ___, ___, 709 S.E.2d 430, 434 (2011) (citation omitted). "We review the denial of a motion to dismiss for insufficient evidence *de novo*." *Id.*

> A criminal conspiracy is an agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful manner. In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice. This evidence may be circumstantial or inferred from the defendant's behavior.

*State v. Shelly*, 176 N.C. App. 575, 586, 627 S.E.2d 287, 296 (2006) (citations and quotations omitted). "[N]o overt act is necessary to complete the crime of conspiracy." *State v. Bindyke*, 288 N.C. 608, 616, 220 S.E.2d 521, 526 (1975). "Direct proof of conspiracy is rarely available, so the crime must generally be proved by circumstantial evidence." *State v. Clark*, 137 N.C. App. 90, 95, 527 S.E.2d 319, 322 (2000) (citation omitted).

During the State's case-in-chief, the victim's written statement to police was admitted into evidence. In her statement, given within twenty minutes of the robbery, the victim related the following details about the robbery.

> I was on Hilderbrand when they came up behind me. Two black males. The one with the gun was light skinned with wide frame glasses on. . . . The second suspect had on all black and a doo-rag on. He was dark skinned. . . . when

> they approached me the light skinned guy pulled the gun
> out which was a small black revolver and said let me get
> that. The light skinned guy pointed the gun at me and then
> I gave my pocket book to the dark skinned guy. The light
> skinned guy then told me to give him my phone.

Later that evening during a show-up, and again at trial, the victim identified defendants Oliphant and Hamilton as the men who approached her that evening. The victim identified defendant Oliphant as the person who held the gun and asked her for her purse. "The other guy reached for the cell phone." The victim identified "[t]he other guy" as defendant Hamilton.

The evidence in this case shows that the victim was approached from behind by both defendants as she walked alone at approximately one o'clock a.m. One defendant held the gun while the other defendant reached for her cellphone. The circumstances here (not dissimilar from those present in many conspiracy cases) do not show the existence of an express agreement between defendants. Indeed such is not required. However, what is shown by the behavior of both defendants is a mutual implied understanding that they would together approach the victim, and with the aid of a firearm, relieve her of her possessions – here, a pocketbook and cellphone.

We hold that, when taken in the light most favorable to the State, the record contains sufficient evidence to show the existence of a mutual, implied understanding between defendants Oliphant and Hamilton to commit the crime of armed robbery. *See id.* Therefore, the trial court did not err in denying defendant Oliphant and defendant Hamilton's individual motions to dismiss. *See Woodard,* ___ N.C. App. at ___, 709 S.E.2d at 434. Accordingly, this argument is overruled.

## III

**[3]** Defendant Hamilton argues that the trial court erred in not allowing defendant Oliphant to examine the victim regarding her probation violation. Specifically, defendant Hamilton argues that exploration of the victim's probation violation was relevant to the victim's credibility. We disagree.

"A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." N.C. Gen. Stat. § 8C-1, Rule 611(b) (2011). Further "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for

the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." N.C.G.S. § 8C-1, Rule 611(a). "[T]he range of relevant cross-examination is very broad, but it is subject to the discretionary powers of the trial judge to keep it within reasonable bounds. The trial court's rulings as to cross-examination will not be held in error absent a showing that the verdict was improperly influenced thereby." *State v. Cook*, 195 N.C. App. 230, 234, 672 S.E.2d 25, 28 (2009) (citations and quotations omitted).

Here, the victim gave the following testimony on cross-examination by defendant Oliphant.

Q. You are in custody currently on a probation violation?

A. That's correct.

Q. You have a court date coming up on that probation violation; is that right?

A. Yes.

Q. I believe [the prosecutor] asked you yesterday why you had a probation violation.

. . .

Q. You told him that you had knee surgery or something?

A. Yes.

Q. That that is why you had the probation violation?

A. That is not why I – it was as a result of me missing my appointments.

. . .

Q. . . . Isn't it true that that is not the only violation?

. . .

Q. Did you get a copy of the violation report?

A. No, I do not.

. . .

Q. Do you know whether or not it could have been dated February 10?

A. No. I have never seen it.

**STATE v. OLIPHANT**

[228 N.C. App. 692 (2013)]

[Defense Counsel]: May I approach the witness, Your Honor?

THE COURT: You may.

[Prosecutor]: Your Honor, may counsel approach?

THE COURT: Yes, sir.
(Whereupon, a bench conference was held off the record.)

THE COURT:
I think you were going to show her that document.

[Defense Counsel]: Yes, sir, I was. Thank you.

BY [Defense Counsel]:
Q. Just to make sure. Have you seen that document?

A. No. I have never seen this. This is the first time I have seen it.

Q. Do you know what it is?

A. The violation report. I have never seen it before.

Q. Do you recognize [the probation officer]'s signature?

MR. LINDAHL: Objection.

THE COURT: Overruled.

THE WITNESS: I don't recognize her signature, but that is it definitely my probation officer.

BY [Defense Counsel]:

Q. ... [Y]our probation officer, said your violation was for not making your appointments?

[Prosecutor]: Objection.

THE COURT: Sustained.

BY [Defense Counsel]:
Q. Did you make the appointments with your probation officer in October of 2011?

A. I made one in October of 2011. I was involved in a car accident.

Q. Excuse me?

A.  I was involved in a car accident. It was hard for me to get around.

Q.  Did you make your appointments with her in November of 2011?

A.  Not all of them.

. . .

Q.  Did you make your appointments with your probation officer in December of 2011?

[Prosecutor]:  Your Honor, I will object

THE COURT:  Sustained.

BY [Defense Counsel]:
Q.  Those had nothing to do with your knee, did they?

A.  Yes, they did.

Q.  Did you make your meetings with AA and NA?

[Prosecutor]:  Objection.

THE COURT:  Sustained. Don't ask any other questions about this violation report.

[Defense Counsel]:  Yes, sir.

THE COURT:  Ladies and gentlemen of the jury, you are to disregard the last question asked by the defense attorney in your deliberations.

Outside the presence of the jury, the trial court stated for the record that it denied defense counsel an opportunity to further examine the victim regarding the probation violation report filed against her because the victim testified that she had not seen the violation report.

Defendant Hamilton argues on appeal that the victim's testimony regarding the basis for her probation violation when compared to the violations included on the probation violation report filed against her was relevant to the victim's credibility. Further, defendant Hamilton contends that the fact that the provisions of the victim's probation required her to attend AA – Alcoholics Anonymous – and NA – Narcotics Anonymous – coupled with the fact that the victim was walking outside at 1:30 a.m. was a sufficient basis to examine her as to whether she was intoxicated when she filed her police report.

We hold that the trial court's ruling preventing the examination of the victim concerning the contents of a probation violation report that she had not previously seen was not an abuse of discretion. *See* N.C. Evid. R. 602 (2011) ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that [s]he has personal knowledge of the matter."). Furthermore, we fail to discern any prejudice to defendant Hamilton from the trial court's ruling. The officer who took the victim's statement that evening testified that she appeared upset, but there was no testimony that she appeared to be intoxicated. And, the victim testified she had not been drinking. Accordingly, defendant Hamilton's argument is overruled.

No error.

Judges ELMORE and ERVIN concur.