IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1162

 Filed: 5 November 2019

Cleveland County, Nos. 16 CRS 50448-49, 50453

STATE OF NORTH CAROLINA

 v.

DALLAS JAY WORLEY

 Appeal by defendant from judgment entered 23 March 2018 by Judge Karen

Eady-Williams in Cleveland County Superior Court. Heard in the Court of Appeals

22 May 2019.

 Attorney General Joshua H. Stein, by Assistant Attorney General Damie
 Adegbuyi Sesay, for the State.

 Mark Montgomery for defendant-appellant.

 ZACHARY, Judge.

 Defendant Dallas Jay Worley appeals from a judgment entered upon a jury’s

verdicts finding him guilty of two counts of statutory sex offense with a child by an

adult, and one count of first-degree kidnapping. Defendant argues the trial court (1)

erred by ordering him to submit to lifetime satellite-based monitoring upon his

release from prison; and (2) committed plain error by permitting two expert witnesses

to vouch for the child’s credibility. Upon review, we hold that Defendant received a

fair trial, free from prejudicial error.

 Background
 STATE V. WORLEY

 Opinion of the Court

 The evidence presented at trial established that Defendant repeatedly sexually

assaulted his seven-year-old niece, “Jane.”1 On multiple occasions, Defendant

subjected Jane to anal penetration and oral sex. Although Defendant threatened to

kill her if she ever revealed what he was doing, Jane eventually informed her mother;

she was then taken to the emergency room for examination. On 14 March 2016,

Defendant was indicted for two counts of statutory sex offense with a child by an

adult, and one count of first-degree kidnapping.

 Defendant’s case came on for trial before the Honorable Karen Eady-Williams

on 19 March 2018 in Cleveland County Superior Court. The State tendered two

witnesses as medical experts: Dr. Daniel Troha and Dr. Nancy Hendrix. Dr. Troha

examined Jane and testified that he observed that “there was a lot of redness around

the labia and in the area surrounding that and the anus,” but he could not specifically

identify the cause of the redness. Dr. Hendrix, who examined Jane after she had

been discharged from the hospital, found that (1) there was “a little bit of redness”

around her vaginal area and anus, (2) there was swelling around her anus, and (3)

“the actual anus [was] opened a little bit, about 3 millimeters.”

 On 23 March 2018, the jury returned verdicts finding Defendant guilty of all

charges. The trial court sentenced Defendant to an active term of 300 to 420 months

in the custody of the North Carolina Division of Adult Correction, and ordered that

 1 We employ a pseudonym to protect the identity of the minor child.

 -2-
 STATE V. WORLEY

 Opinion of the Court

he submit to satellite-based monitoring for the remainder of his life upon his release

from prison. Defendant gave oral notice of appeal in open court.

 Discussion

 I. Satellite-Based Monitoring Order

 Defendant first argues that the trial court erred by ordering him to submit to

lifetime satellite-based monitoring upon his release from prison, absent evidence that

lifetime satellite-based monitoring was a reasonable Fourth Amendment search.

Procedurally, however, Defendant’s failure to comply with our Appellate Rules

renders this Court unable to review this claim.

 First, Defendant neglected to file written notice of appeal from the satellite-

based monitoring order. A satellite-based monitoring proceeding is a civil action.

State v. Dye, ___ N.C. App. ___, ___, 802 S.E.2d 737, 741 (2017). “Any party . . . in a

civil action . . . may take appeal by filing notice of appeal with the clerk of superior

court and serving copies thereof upon all other parties.” N.C.R. App. P. 3(a).

Accordingly, failure to comply with Rule 3 leaves this Court without jurisdiction to

hear the satellite-based monitoring order. Currin-Dillehay Bldg. Supply v. Frazier,

100 N.C. App. 188, 189, 394 S.E.2d 683, 683, appeal dismissed and cert. denied, 327

N.C. 633, 399 S.E.2d 326 (1990).

 In addition, Defendant did not argue before the trial court that satellite-based

monitoring constituted an unreasonable Fourth Amendment search. See N.C.R. App.

 -3-
 STATE V. WORLEY

 Opinion of the Court

P. 10(a)(1) (“In order to preserve an issue for appellate review, a party must have

presented to the trial court a timely request, objection, or motion, stating the specific

grounds for the ruling the party desired the court to make.”). “[C]onstitutional

arguments not brought forth at the lower court level will be dismissed on appeal

pursuant to Rule 10(a)(1).” In re Davis, ___ N.C. App. ___, ___, 808 S.E.2d 369, 374

(2017).

 Having failed to follow these Rules, on 21 January 2019, Defendant filed a

petition for writ of certiorari requesting that this Court reach the merits of his

constitutional challenge to the satellite-based monitoring order. Defendant

“essentially asks this Court to take two extraordinary steps to reach the merits, first

by issuing a writ of certiorari to hear his appeal, and then by invoking Rule 2 of the

North Carolina Rules of Appellate Procedure to address his unpreserved

constitutional argument.” State v. DeJesus, ___ N.C. App. ___, ___, 827 S.E.2d 744,

753 (quotation marks omitted), disc. review denied, ___ N.C. ___, 830 S.E.2d 837

(2019).2

 We decline to take these extraordinary steps. Defendant fails to identify any

evidence of manifest injustice warranting the invocation of Rule 2. Therefore, in our

 2 “To prevent manifest injustice to a party . . . either court of the appellate division may . . .
suspend or vary the requirements or provisions of any of these rules in a case pending before it upon
application of a party or upon its own initiative[.]” N.C.R. App. P. 2.

 -4-
 STATE V. WORLEY

 Opinion of the Court

discretion, we deny Defendant’s petition and dismiss his appeal of the satellite-based

monitoring order.

 II. Expert Vouching

 Defendant argues that “the trial court committed plain error in allowing two

of the State’s experts to vouch for” Jane’s credibility. Specifically, Defendant takes

issue with the testimony of Dr. Nancy Hendrix and Ms. Michelle Sullivan. We

address each of Defendant’s arguments in turn.

 A. Standard of Review

 In criminal cases, unpreserved issues “may be made the basis of an issue

presented on appeal when the judicial action questioned is specifically and distinctly

contended to amount to plain error.” N.C.R. App. P. 10(a)(4). Because Defendant

failed to object to either of the experts’ testimony vouching for Jane’s credibility,

Defendant is only entitled to plain error review, and may prevail only by showing

“that a fundamental error occurred at trial.” State v. Oliphant, 228 N.C. App. 692,

696, 747 S.E.2d 117, 121 (2013), disc. review denied, 367 N.C. 289, 753 S.E.2d 677

(2014). “To show that an error was fundamental, a defendant must establish

prejudice – that, after examination of the entire record, the error had a probable

impact on the jury’s finding that the defendant was guilty.” Id. (emphasis added)

(quotation marks omitted); see State v. Lawrence, 365 N.C. 506, 507, 723 S.E.2d 326,

327 (2012) (“[T]he rule provides that a criminal defendant is entitled to a new trial if

 -5-
 STATE V. WORLEY

 Opinion of the Court

the defendant demonstrates that the jury probably would have returned a different

verdict had the error not occurred.”). Moreover, “the plain error rule may not be

applied on a cumulative basis, but rather a defendant must show that each individual

error rises to the level of plain error.” State v. Dean, 196 N.C. App. 180, 194, 674

S.E.2d 453, 463, disc. review denied, 363 N.C. 376, 679 S.E.2d 139 (2009).

 B. Impermissible Vouching

 It is well settled that an expert witness’s “opinion that . . . children were

sexually abused [is] clearly admissible,” but an “opinion that . . . children were

sexually abused by [a] defendant [is] not admissible.” State v. Figured, 116 N.C. App.

1, 9, 446 S.E.2d 838, 843 (1994), disc. review denied, 339 N.C. 617, 454 S.E.2d 261

(1995). Our courts do not permit an expert witness to vouch for the credibility of the

victim of the alleged crime in a child sexual abuse case, State v. Aguallo, 322 N.C.

818, 822, 370 S.E.2d 676, 678 (1988), in that an expert is in “no better position than

the jury to assess credibility.” In re T.R.B., 157 N.C. App. 609, 617, 582 S.E.2d 279,

285 (2003), appeal dismissed and disc. review improvidently allowed, 358 N.C. 370-

71, 595 S.E.2d 146 (2004). Consequently, our Supreme Court has found reversible

error where an expert testified “that the victim was believable, had no record of lying,

and had never been untruthful.” Aguallo, 322 N.C. at 822, 370 S.E.2d at 678.

 In cases involving the alleged sexual abuse of a child,

 the trial court should not admit expert opinion that sexual
 abuse has in fact occurred because, absent physical

 -6-
 STATE V. WORLEY

 Opinion of the Court

 evidence supporting a diagnosis of sexual abuse, such
 testimony is an impermissible opinion regarding the
 victim’s credibility. However, an expert witness may
 testify, upon a proper foundation, as to the profiles of
 sexually abused children and whether a particular
 complainant has symptoms or characteristics consistent
 therewith.

State v. Stancil, 355 N.C. 266, 266-67, 559 S.E.2d 788, 789 (2002) (per curiam)

(citations omitted).

 C. Dr. Hendrix’s Expert Testimony

 Dr. Hendrix had practiced as a pediatrician for 24 years, and the State

tendered her as an expert in the fields of pediatric medicine and child sexual abuse.

When asked during direct examination whether “children tend to make up stories

about sexual abuse,” Dr. Hendrix answered in the negative. Dr. Hendrix then

explained that Jane “gave excellent detail” regarding Defendant’s illicit actions, and

noted on cross-examination that “her story was very consistent.” Although Defendant

failed to object during these portions of Dr. Hendrix’s testimony at trial, he now

asserts that these statements constituted impermissible vouching, and that the trial

court’s admission of this testimony rose to the level of plain error. Defendant has

failed to show any plain error.

 Our Supreme Court has explained that “an expert witness may testify, upon a

proper foundation, as to the profiles of sexually abused children.” Id. at 267, 559

S.E.2d at 789. Likewise, an expert may testify to “whether a particular complainant

 -7-
 STATE V. WORLEY

 Opinion of the Court

has symptoms or characteristics consistent therewith.” Id. Although an expert may

not speak to whether sexual abuse has occurred “in the absence of physical evidence,”

an expert may testify that the child exhibits characteristics consistent with those

exhibited by abused children. State v. Grover, 142 N.C. App. 411, 419, 543 S.E.2d

179, 184, aff’d per curiam, 354 N.C. 354, 553 S.E.2d 679 (2001). The unique nature

of these offenses “make[s] [experts] better qualified than the jury to form an opinion

as to the characteristics of abused children.” Id.

 Dr. Hendrix’s expert opinion that “children do not tend to make up stories

about sexual abuse” was therefore admissible under our case law. This general

statement of opinion did not vouch for Jane’s credibility, but instead merely described

the profile of a sexually abused child. See Stancil, 355 N.C. at 267, 559 S.E.2d at 789;

State v. Oliver, 85 N.C. App. 1, 11, 354 S.E.2d 527, 533, disc. review denied, 320 N.C.

174, 358 S.E.2d 64 (1987) (finding no error where the expert-opinion testimony was

based on knowledge unrelated to the victim’s credibility).

 Moreover, we find no error with Dr. Hendrix’s testimony regarding the

“consistent” nature and “excellent detail” of Jane’s reports. While it would be

improper for an expert witness, based on an interview with the child, to opine that

the child had been sexually abused, Grover, 142 N.C. App. at 414, 543 S.E.2d at 181,

statements regarding the child’s consistency in recounting the alleged abuse are

nevertheless admissible. See, e.g., State v. Stancil, 146 N.C. App. 234, 241, 552 S.E.2d

 -8-
 STATE V. WORLEY

 Opinion of the Court

212, 215-16 (2001) (finding no error where the expert testified that the child was

consistent in relating facts during each interview), aff’d, 355 N.C. 266, 559 S.E.2d

788 (2002).

 In the instant case, Dr. Hendrix testified that her office has worked with 25 to

30 children per year since 1998, and that she personally works with approximately

seven or eight of those children each year. Dr. Hendrix’s experience in treating

sexually abused children supports her statements that Jane provided “consistent”

accounts and “excellent detail” in their conversations.

 D. Use of the Word “Disclose”

 Defendant also asserts that it was error for Dr. Hendrix and Ms. Sullivan to

use the word “disclose” when describing what Jane told each of them in private. In

support of this argument, Defendant cites State v. Jamison, ___ N.C. App. ___, 821

S.E.2d 665, 2018 WL6318321 (2018) (unpublished), disc. review denied, ___ N.C. ___,

826 S.E.2d 701 (2019).

 In Jamison, the defendant argued that the repeated use of the words “disclose”

and “disclosure” by the prosecutor and State’s expert at trial enhanced the victim’s

credibility, and amounted to impermissible vouching. Jamison, 2018 WL6318321 at

*4. This Court addressed the meaning of the word “disclosure” by consulting and

citing a preeminent legal dictionary, as is standard practice. Id. (concluding that the

word “disclosure” is defined as “[t]he act or process of making known something that

 -9-
 STATE V. WORLEY

 Opinion of the Court

was previously unknown; a revelation of facts” (quoting Disclosure, Black’s Law

Dictionary (9th ed. 2009))).3 The Court in Jamison determined that the frequent use

of the terms “disclose” and “disclosure” suggested that “there was something factual

to divulge, and [was] itself a comment on the declarant’s credibility and the

consequent reliability of what [was] being revealed.” Id.

 However, a panel of this Court recently published an opinion addressing a

nearly identical argument to the one considered in our Court’s decision in Jamison,

and reiterated in the instant case by Defendant. State v. Betts, No. COA18-963, ___

N.C. App. ___, ___ S.E.2d ___ (filed Sept. 3, 2019). There, the defendant asserted that

it was plain error to admit testimony from the State’s experts where the term

“disclose” was repeatedly used to summarize the minor victim’s statements. Id. slip

op. at 10. Citing Jamison, the defendant in Betts argued that the use of the word

“disclose” amounted to vouching for the minor victim’s credibility. Id. slip op. at 11.

 The Betts panel “decline[d] to follow [the Jamison] panel’s reasoning.” Id. slip

op. at 13. Instead, it held that “[t]here is nothing about [the] use of the term ‘disclose’,

[sic] standing alone, that conveys believability or credibility.” Id. Thus, repeated use

of the word “disclose” or its variants does not constitute impermissible vouching for a

declarant’s credibility.

 3 This definition of “disclosure” is also “consistent with the meanings contained in other
standard dictionaries of the English language.” State v. Betts, No. COA18-963, ___ N.C. App. ___, ___,
___ S.E.2d ___, ___ (filed Sept. 3, 2019) (Tyson, J., concurring in part and dissenting in part) (citing
multiple prominent, non-legal dictionaries).

 - 10 -
 STATE V. WORLEY

 Opinion of the Court

 In light of Betts, we must conclude that the repeated use of the word “disclose”

or its variants at trial of this matter was not plain error. Defendant’s argument is

overruled.

 Assuming, arguendo, that the admission of portions of Dr. Hendrix’s and Ms.

Sullivan’s testimony without objection was error, and in light of the physical and

other substantial testimony admitted, and for the reasons stated below, any asserted

error does not rise to the level of plain error warranting a new trial. See State v.

Sprouse, 217 N.C. App. 230, 242, 719 S.E.2d 234, 243 (2011) (holding that there was

no prejudice where “absent the [impermissible vouching] testimony, the . . . case

involved more evidence of guilt against the defendant than simply the testimony of

the child victim and the corroborating witnesses”), disc. review denied, 365 N.C. 552,

722 S.E.2d 787 (2012).

 E. Ms. Sullivan’s Expert Testimony

 Defendant further contends that the trial court erred in the admission of Ms.

Sullivan’s testimony concerning statements that “assured the jury that [Jane’s] claim

of abuse was true.” We agree.

 “If scientific, technical or other specialized knowledge will assist the trier of

fact to understand the evidence or to determine a fact in issue, a witness qualified as

an expert by knowledge, skill, experience, training, or education, may testify thereto

in the form of an opinion[.]” N.C. Gen. Stat. § 8C-1, Rule 702(a) (2017). An expert

 - 11 -
 STATE V. WORLEY

 Opinion of the Court

witness is permitted to testify as to matters within the area of her expertise. Mills v.

New River Wood Corp., 77 N.C. App. 576, 578, 335 S.E.2d 759, 761 (1985). It follows,

then, that an expert may not offer an opinion regarding issues that are beyond the

scope of the witness’s field of expertise. See, e.g., State v. O’Hanlan, 153 N.C. App.

546, 557-58, 570 S.E.2d 751, 759 (2002), cert. denied, 358 N.C. 158, 593 S.E.2d 397

(2004) (concluding that a medical expert should not have been allowed to testify as to

definitions of terms such as “rape” and “kidnap”).

 The State tendered Ms. Sullivan as an expert in marriage and family

counseling. She testified that she received a Master’s degree in marriage and family

therapy, and that she primarily treats children. Nevertheless, Defendant challenges

Ms. Sullivan’s general statements regarding “trauma[-]focused” therapy as

impermissible vouching for Jane’s credibility. We disagree.

 In accordance with her area of expertise, it was permissible for Ms. Sullivan to

testify that trauma-focused therapy would be recommended “because of a specific

event that happened to the child.” Likewise, Ms. Sullivan could properly comment

as to how children like Jane are generally encouraged during a therapy session “to

tell the whole story of what happened” to them.

 Defendant also mistakenly asserts that Ms. Sullivan impermissibly vouched

for Jane’s credibility by testifying:

 In a therapeutic setting I’m not trying to investigate. I’m
 not—I’m there to sit with them with the feelings. We really

 - 12 -
 STATE V. WORLEY

 Opinion of the Court

 work on how this certain incident that happened is going to
 impact her feelings and her thoughts in the long run.
 Not—I’m not trying to write a police report.

(Emphasis added).

 Our review of the record indicates that the phrase “this certain incident that

happened” was not improper in context. This testimony was prompted by the State’s

question: “Do you ask specific questions about sexual acts?” The crux of the question

related to Ms. Sullivan’s general practice and procedures when interviewing children.

Neither the question nor Ms. Sullivan’s answer directly concerned Jane or the

substance of her interview.

 However, Ms. Sullivan also opined that Jane “really needs that extra support

for trauma-focused [therapy] because of the sexual abuse that she experienced.” This

statement is demonstrably different from the aforementioned general descriptions of

trauma-focused therapy. Unlike those statements, here, Ms. Sullivan’s testimony

improperly conveyed to the jury her opinion of Jane’s veracity. Put differently, Ms.

Sullivan’s subjective beliefs concerning Jane’s veracity were conveyed to the jury. See

State v. Horton, 200 N.C. App. 74, 78, 682 S.E.2d 754, 757-58 (2009) (holding that it

was inadmissible for the expert to testify that “[i]n all of my training and experience,

when children provide those types of specific details it enhances their credibility”).

The same is true for Ms. Sullivan’s testimony: “I believe [Jane].” Thus, Ms. Sullivan’s

direct commentary on Jane’s credibility was erroneously admitted.

 - 13 -
 STATE V. WORLEY

 Opinion of the Court

 In sum, the trial court erroneously admitted: (1) Ms. Sullivan’s statement that

trauma-focused therapy would be appropriate “because of the sexual abuse [Jane]

experienced”; and (2) Ms. Sullivan’s statement “I believe [Jane].” This, however, does

not end our analysis.

 F. Plain Error

 Notwithstanding the presumed error and impermissible testimony,

Defendant’s convictions will be sustained absent a showing that the trial court’s

admission of this testimony amounted to plain error, meaning “that the jury probably

would have returned a different verdict had the error not occurred.” Lawrence, 365

N.C. at 507, 723 S.E.2d at 327 (emphasis added). Defendant contends that the case

“rested entirely on [Jane’s] statements,” and that her “credibility was suspect”

because “she had a history of lying.” In addition, Defendant asserts that “there was

no diagnostic physical evidence of abuse.” After careful review of the record, we

conclude that it is not probable that the jury would have returned a different verdict

had portions of Ms. Sullivan’s testimony been excluded.

 At the outset of the State’s presentation of evidence, nine-year-old Jane

testified at length to her experiences as the victim of Defendant’s repeated assaults.

Jane stated that Defendant made her drink alcohol, and she described how, on

multiple occasions, Defendant “shoved his penis up [her] butt and it started bleeding

and [she] started crying.” Jane also testified in graphic detail about a particular

 - 14 -
 STATE V. WORLEY

 Opinion of the Court

incident when Defendant woke her up around midnight and assaulted her while her

mother and brother slept in the next room. The jury listened to Jane describe the

pain she suffered, as well as Defendant’s threat to her: “If you tell anybody, I will kill

you.” In total, Jane testified on direct examination for an hour and a half, and was

cross-examined for an hour and fifteen minutes. It is evident, therefore, that the

jurors could reach their own conclusions regarding Jane’s credibility based on her

extensive testimony.

 Moreover, Jane’s testimony was not only corroborated by other witnesses, but

also by medical evidence. See Sprouse, 217 N.C. App. at 242, 719 S.E.2d at 243. Dr.

Troha, an emergency physician at the Cleveland Regional Medical Center in Shelby,

North Carolina, testified concerning his examination of Jane after she first came

forward with the accusation. In his interview with Jane, her description of

Defendant’s acts was consistent with her previous statements to others: namely, that

he would “put his penis in [her] butt,” which would subsequently cause her to bleed

and experience pain when having bowel movements. After he interviewed Jane, Dr.

Troha conducted an external examination which revealed that “there was a lot of

redness around the labia and in the area surrounding that and the anus.” Dr. Troha

testified that “a repetitive friction” would cause redness and irritation of the anus.

This testimony was corroborated by Dr. Hendrix’s physical examination of Jane 5

days after Dr. Troha met with her. Dr. Hendrix noted that either constipation or

 - 15 -
 STATE V. WORLEY

 Opinion of the Court

“penetrating trauma” could cause similar symptoms, but both doctors were able to

rule out constipation based on Jane’s medical history.

 Dr. Christopher Cerjan also testified to his review of Jane’s medical

examinations. Dr. Cerjan meticulously explained that Jane had an “anal opening . .

. approximately 3 millimeters,” as well as the presence of swollen genitals. He further

testified about the experience of “forced rectal penetration” and the resultant pain

that a child would endure. Three other witnesses also corroborated Jane’s testimony,

using language similar—if not identical—to that used by Jane.

 Although Defendant testified and denied any wrongdoing, given the

substantial evidence against Defendant, we cannot conclude that the trial court’s

admission of Ms. Sullivan’s impermissible vouching testimony—absent any objection

from Defendant—had “a probable impact on the jury’s finding that [Defendant] was

guilty.” Oliphant, 228 N.C. App. at 696, 747 S.E.2d at 120. In that reversal under a

plain error review is only warranted in “exceptional case[s],” id. at 697, 747 S.E.2d at

121, we hold that the admission of the erroneous evidence here does not rise to the

level of plain error warranting a new trial.

 III.

 Finally, Defendant argues in the alternative that his lawyer’s failure to

“adequately object to the vouching” constituted ineffective assistance of counsel.

 - 16 -
 STATE V. WORLEY

 Opinion of the Court

 To succeed on a claim of ineffective assistance of counsel, “a defendant must

show that (1) counsel’s performance was deficient, and (2) the deficient performance

prejudiced the defense.” State v. Edgar, 242 N.C. App. 624, 631, 777 S.E.2d 766, 770

(2015) (quotation marks omitted). However, here, we have already “determine[d] . .

. that there is no reasonable probability that[,] in the absence of counsel’s alleged

errors[,] the result of the proceeding would have been different.” State v. Turner, 237

N.C. App. 388, 396, 765 S.E.2d 77, 84 (2014) (citation and brackets omitted), disc.

review denied, 368 N.C. 245, 768 S.E.2d 563 (2015). Accordingly, we need not address

this claim.

 Conclusion

 Defendant failed to: (1) preserve his Fourth Amendment challenge, and (2)

timely appeal the satellite-based monitoring order. We dismiss that portion of

Defendant’s appeal, and deny the petition for writ of certiorari.

 Although the trial court improperly admitted certain expert testimony to

which Defendant did not object, and which presumably constituted impermissible

vouching, the admission did not rise to the level of plain error in light of the other

overwhelming evidence supporting Defendant’s guilt. The jury was presented with

ample evidence of Defendant’s guilt notwithstanding the trial court’s error.

Accordingly, we also dismiss Defendant’s ineffective assistance of counsel claim.

 DISMISSED IN PART; NO PREJUDICIAL ERROR IN PART.

 - 17 -
 STATE V. WORLEY

 Opinion of the Court

Judges BRYANT and TYSON concur.

 - 18 -