DIETZ, Judge.
 

 *343
 
 Defendant Caleb Hill appeals his convictions on multiple counts of breaking and entering, larceny, and injury to real property based on a series of break-ins at businesses in a shopping center in Chapel Hill.
 

 Hill first argues that the trial court erred by failing to exclude the testimony of two law enforcement officers who identified him in surveillance video from the shopping center. As explained below, the officers were familiar with Hill and recognized distinct features of Hill's face, posture, and gait that would not have been evident to the jurors. Hill's appearance also had changed from the time of the crimes to the time of trial, and the officers' testimony assisted the jury in understanding Hill's appearance at the time of the crime and its similarity to the person in the surveillance videos. Accordingly, the trial court did not abuse its discretion in permitting this testimony.
 

 Hill also argues that there were several fatal variances between the indictment and the evidence at trial. Hill failed to raise these issues at trial and they are waived on appeal. However, we conclude that one of
 
 *344
 
 these fatal variance arguments is meritorious and exercise our discretion under Rule 2 to suspend the appellate preservation rules and consider that argument, which concerns the theft of money and an iPod from a frozen yogurt shop. As explained in more detail below, the State alleged the property belonged to Tutti Frutti, LLC, but it actually belonged to Jason Wei, the son of the sole member of that limited liability company. Moreover, the State failed to show that Tutti Frutti, LLC was in lawful custody and possession of Mr. Wei's property at the time it was stolen. Accordingly, we vacate that conviction but reject Hill's other fatal variance claims.
 

 Finally, Hill argues-and the State concedes-that the trial court's award of restitution is erroneous because it included restitution for a larceny for which Hill was acquitted. We vacate the portion of Hill's sentence concerning restitution and remand this case for further proceedings on that issue.
 

 Facts and Procedural History
 

 At or around 4:00 a.m. on 7 November 2013, a property manager for Bryan Properties, Inc. received a call that the alarm for the Lumina Theater, one of the properties her company manages at Southern Village in Chapel Hill, was going off and police had been dispatched. Upon arrival, she learned that four other businesses surrounding the theater had also been broken into, including Subway, Village Pediatrics, Tutti Frutti (a frozen yogurt shop), and Town Hall Grill. The suspect entered each business by shattering a glass window or door except for Town Hall Grill where there was no entry because the glass did not shatter. A second property manager pulled the surveillance videos from Lumina Theater, which showed a suspect inside. Surveillance video also showed a person breaking into both Subway and Village Pediatrics. Jason Wei, son of the owner of the Tutti Frutti store,
 
 [1]
 
 also turned over surveillance video and reported that his iPod had been taken but was not sure if any money had been stolen. A physician at Village Pediatrics also reported that her Hewlett-Packard laptop was missing from her office.
 

 Officers and investigators of the Chapel Hill Police Department arrived, including Officer Shane Osborne. After reviewing the surveillance videos, he was sure that he recognized the suspect as Caleb Hill. The Subway video gave Osborne the best opportunity to get a good look
 
 *345
 
 at the face of the suspect, and Osborne was then "100 percent sure" it
 
 *181
 
 was Hill. Officer Osborne was familiar with Hill from prior interactions with him. He and his partner, Officer Ragan Bradley Kramer, arrested Hill in May 2013, and between then and 7 November 2013, had seen Hill approximately ten to fifteen times in the community. Officer Osborne last saw Hill approximately two weeks before the Southern Village break-ins.
 

 When Officer Osborne viewed the video footage, he recognized Hill based on a number of factors. Osborne noticed Hill's irregular, hunched-over posture and the way he dragged his feet when he walked. He also noticed Hill's distinctive facial features, including the ridge line of his eyebrows, his nose, chin, and deep-sunken eyes. Finally, Osborne saw that the person in the video wore the same clothes, including unusually long and ill-fitting pants, worn by Hill in the previous encounters between the two. Confident in his identification, Officer Osborne showed the video to Officer Kramer, who also was familiar with Hill's appearance. Officer Kramer agreed that the suspect in the video was Hill.
 

 Police arrested Hill and questioned him at the police station. During the questioning, Officer Osborne noticed a small piece of tempered glass on the floor near Hill. Osborne suspected this glass may be related to the shattered glass doors at Southern Village. When Osborne asked about the glass, Hill became very defensive and refused to answer further questions.
 

 At trial, the prosecution played the surveillance videos for the jury. Officer Kramer and Officer Osborne testified that they believed the suspect in the surveillance videos was Hill based on their familiarity with Hill's distinctive features. Hill moved to exclude the officer identification, and the trial court denied the motion. Hill also moved to dismiss his charges at the close of the State's case and the close of all evidence. The trial court denied those motions as well.
 

 The jury returned a verdict of not guilty on one count of felony larceny but convicted Hill on the remaining counts, including four counts of breaking and entering, one count of attempted breaking and entering, two counts of felony larceny after a breaking and entering, and five counts of injury to real property. Hill timely appealed.
 

 Analysis
 

 Hill raises four issues on appeal: (1) whether the trial court erred in allowing Officers Osborne and Kramer to testify that they believed Hill was the person seen in the surveillance videos; (2) whether there were several fatal variances in the indictments; (3) whether he received
 
 *346
 
 ineffective assistance of counsel; and (4) whether the trial court erred in its restitution award. We address these issues in turn.
 

 I. Officer Testimony Concerning the Surveillance Videos
 

 Hill first argues that the trial court erred in allowing Officers Osborne and Kramer to give their lay opinions that the person in the surveillance videos was Hill. Specifically, Hill alleges the officers were no better qualified than the jury to identify the suspect in the videos and, therefore, he was prejudiced by the admission of their testimony. We do not agree.
 

 We review the trial court's decision to admit testimony for abuse of discretion.
 
 State v. Washington,
 

 141 N.C.App. 354
 
 , 362,
 
 540 S.E.2d 388
 
 , 395 (2000). Admissible lay opinion testimony "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."
 

 Id.
 

 This Court has identified the following factors as relevant to determining whether a witness's identification of the defendant from surveillance footage is admissible:
 

 (1) the witness's general level of familiarity with the defendant's appearance;
 

 (2) the witness's familiarity with the defendant's appearance at the time the surveillance photograph was taken or when the defendant was dressed in a manner similar to the individual depicted in the photograph;
 

 (3) whether the defendant had disguised his appearance at the time of the offense; and
 
 *182
 
 (4) whether the defendant had altered his appearance prior to trial.
 

 State v. Collins,
 

 216 N.C.App. 249
 
 , 255-56,
 
 716 S.E.2d 255
 
 , 260 (2011).
 

 Here, Officers Osborne and Kramer testified that they both had previous interactions with Hill, including having arrested him in 2013. Officer Osborne testified that he had seen Hill some ten to fifteen times between May and November 2013. Osborne also testified that he had seen Hill approximately two weeks before the Southern Village break-ins. Officer Kramer testified that he had seen Hill several times and that he occasionally spoke to him. During his testimony, Officer Osborne also narrated the surveillance video for the jury and pointed out the exact points in the video where he was able to get a good look at the suspect. He referenced the features of the person in the video-pronounced eyebrows, pointy nose, very set-in eyes, cleft chin-as well as the person's
 
 *347
 
 irregular posture and gait as factors which helped him determine that the suspect was Hill based on his familiarity with Hill. After viewing the video, Officer Osborne was "100 percent sure" Hill was the person in the video and later asked Officer Kramer to view it. Kramer agreed that he too was "100 percent sure" the suspect in the video was Hill. At trial, Officer Kramer also pointed to Hill's distinct facial features as the reason he recognized Hill.
 

 Moreover, Hill's appearance changed between the time the crimes were committed and the trial. Hill had grown a beard and lost weight by the time of trial. Officer Osborne testified that Hill looked "very different.... [W]hen I dealt with him he did not look like he does today." In light of the officers' familiarity with the distinctive features of Hill's face, posture, and gait, and Hill's changed appearance, we hold that the officers' testimony was rationally based on their special knowledge of Hill's appearance and was helpful to the jury's determination of whether Hill was the person seen in the video. Accordingly, the trial court did not abuse its discretion in admitting the officers' testimony.
 

 II. Fatal Variance Arguments
 

 Hill next argues that there was a fatal variance between the allegations in the indictment and the evidence at trial. Hill concedes that he failed to preserve this issue for appellate review but asks this Court to invoke Rule 2 of the Rules of Appellate Procedure to review the issue. As explained below, we exercise our discretion and invoke Rule 2 with respect to one of Hill's arguments.
 

 This Court repeatedly has held that a "[d]efendant must preserve the right to appeal a fatal variance."
 
 State v. Mason,
 

 222 N.C.App. 223
 
 , 226,
 
 730 S.E.2d 795
 
 , 798 (2012) ;
 
 State v. Pender,
 
 --- N.C.App. ----,
 
 776 S.E.2d 352
 
 , 358 (2015). If the fatal variance was not raised in the trial court, this Court lacks the ability to review that issue.
 
 Mason,
 

 222 N.C.App. at 226
 
 ,
 
 730 S.E.2d at 798
 
 . Rule 2 of the Rules of Appellate Procedure permits this Court to suspend the rules regarding preservation of issues for appeal. But this Court can invoke Rule 2 only in "exceptional circumstances ... in which a fundamental purpose of the appellate rules is at stake."
 
 Pender,
 
 ---N.C.App. at ----,
 
 776 S.E.2d at 358
 
 (alteration in original).
 

 Hill first argues that there was a fatal variance between the allegation that he stole an iPod and $5.00 from Tutti Frutti, LLC and the proof at trial, which showed that the iPod and any stolen money belonged to Jason Wei, the son of the owner of the Tutti Frutti store. As explained below, we believe this argument has merit. We therefore exercise our
 
 *348
 
 discretion to hear this issue despite Hill's failure to preserve it below.
 
 See
 

 State v. Gayton-Barbosa,
 

 197 N.C.App. 129
 
 , 134-35,
 
 676 S.E.2d 586
 
 , 589-90 (2009).
 

 This issue requires us to reconcile seemingly inconsistent decisions from this Court cited by the parties. In
 
 State v. Johnson,
 
 an indictment alleged that the defendant stole two letter openers owned by a church, but the proof at trial was that the letter openers belonged to a priest, not to the church.
 
 77 N.C.App. 583
 
 , 585,
 
 335 S.E.2d 770
 
 , 772 (1985). This Court held that the discrepancy amounted to a fatal variance between the indictment and the proof.
 

 Id.
 

 *183
 
 By contrast, in
 
 State v. Graham,
 
 an indictment alleged that the defendant stole money and a radio owned by the Maury Post Office, but the proof at trial was that the money and radio belonged to the postmaster, not to the post office.
 
 47 N.C.App. 303
 
 , 307,
 
 267 S.E.2d 56
 
 , 59 (1980). This Court held that proof "that the post office is not the owner of such property is not a fatal defect in such a case as this where the property stolen was owned by the postmaster and he had left the property in the post office."
 

 Id.
 

 The Court explained that "[t]he post office was in lawful custody and possession of the property at the time it was taken[.]"
 

 Id.
 

 These cases involve virtually identical factual scenarios, with the only distinguishing factor being the apparent proof in
 
 Graham
 
 that the post office was in "lawful custody and possession" of the postmaster's property. We are bound by all past precedent of this Court and, in an effort to harmonize these decisions, conclude that
 
 Graham
 
 applies only when there is proof at trial that the person named as the property's owner in the indictment was in "lawful custody and possession" of the property, even if it actually was owned by someone else.
 

 Other cases confirm our interpretation of the distinction between the
 
 Johnson
 
 and
 
 Graham
 
 holdings. For example, in
 
 State v. Liddell,
 
 the indictment alleged that the defendant stole some cigarettes, money, and hamburger patties belonging to Lees-McRae College.
 
 39 N.C.App. 373
 
 , 374,
 
 250 S.E.2d 77
 
 , 78 (1979). The proof at trial showed that the property belonged to vendors who supplied the college's vending machines and cafeteria.
 

 Id.
 

 This Court affirmed the conviction, holding that the evidence showed Lees-McRae College "was in lawful possession of the property at the time of the offense" because it fit the "definition of a bailee."
 
 Id.
 
 at 375,
 
 250 S.E.2d at 79
 
 . Other cases from this Court have reached similar results.
 
 See
 

 State v. Holley,
 

 35 N.C.App. 64
 
 , 67,
 
 239 S.E.2d 853
 
 , 855 (1978) ;
 
 State v. Vawter,
 

 33 N.C.App. 131
 
 , 136,
 
 234 S.E.2d 438
 
 , 441 (1977). Accordingly, we hold that there is no fatal variance
 
 *349
 
 between an indictment and the proof at trial if the State establishes that the alleged owner of stolen property had lawful possession and custody of the property, even if it did not actually own the property.
 

 Here, the State points to no evidence at trial proving that Tutti Frutti, LLC was in lawful custody and possession of Jason Wei's money and iPod. Indeed, there was no testimony at all concerning why Mr. Wei's money and iPod were at the store. Thus, we conclude that we are bound by
 
 Johnson
 
 and must vacate this count of larceny after breaking and entering because of a fatal variance between the indictment and the proof at trial.
 

 Hill also argues that there was a fatal variance between the allegation that the broken windows and other real property at Southern Village belonged to Bryan Properties and the proof at trial, which established that Bryan Properties merely managed the property for some other owner. Unlike Mr. Wei's iPod, there was evidence at trial that Bryan Properties had "lawful custody and possession" of the damaged property. Moreover, our Supreme Court recently held that an indictment charging a defendant with damage to real property need only identify the real property itself, not its owner, to be valid.
 
 State v. Spivey,
 
 --- N.C. ----,
 
 782 S.E.2d 872
 
 (2016). Thus, unlike the allegations involving Tutti Frutti, we do not believe any variance on the allegations concerning Bryan Properties would be fatal. We therefore decline to invoke Rule 2 because this argument does not present the sort of "exceptional circumstances ... in which a fundamental purpose of the appellate rules is at stake."
 
 Pender,
 
 --- N.C.App. at ----,
 
 776 S.E.2d at 358
 
 .
 

 III. Ineffective Assistance of Counsel
 

 Hill next contends that his counsel's failure to raise the fatal variance issues at trial deprived him of his Sixth Amendment right to the effective assistance of counsel. Our conclusion that Hill's fatal variance claim concerning damage to property at Southern Village is meritless necessarily means that counsel's failure to raise that issue was not deficient performance.
 
 See
 

 Pender,
 
 --- N.C.App. at ----,
 
 776 S.E.2d at 358
 
 . Likewise,
 
 *184
 
 our conclusion that Hill's fatal variance claim concerning the money and iPod is meritorious, and that we will therefore excuse counsel's failure to preserve the issue below by invoking Rule 2, obviates our need to address counsel's performance on this issue.
 

 IV. Restitution
 

 Finally, Hill argues-and the State concedes-that the trial court erred by ordering Hill to pay $698.08 in restitution for items taken from
 
 *350
 
 Village Pediatrics because the jury acquitted Hill of the larceny charge concerning Village Pediatrics. Both parties agree that the appropriate remedy is to vacate the portion of Hill's sentence imposing restitution and remand this case for further proceedings on the issue of restitution. We agree, vacate the award of restitution, and remand to the trial court for further proceedings.
 

 Conclusion
 

 We vacate the count of felony larceny after a breaking and entering concerning Tutti Frutti, LLC but affirm the remaining convictions. We vacate the restitution award. We remand for further proceedings consistent with this opinion.
 

 AFFIRMED IN PART; VACATED AND REMANDED IN PART.
 

 Judges STROUD and TYSON concur.
 

 [1]
 

 More accurately, Mr. Wei's father apparently is the sole member of Tutti Frutti, LLC, which owns the store. We refer to Jason Wei as the "owner's son" for consistency because that is how the parties' briefs describe him.