STROUD, Judge.
 

 *816
 
 Defendant Diego Leander Young appeals from judgments entered upon the jury verdicts finding him guilty of armed robbery and conspiracy to commit armed robbery. Because the State presented sufficient evidence of the existence of a conspiracy to commit armed robbery, and because defendant has failed to demonstrate any error, much less plain error, in the authentication and relevancy of photographs identified by the witnesses as depicting the person who robbed them, we find no error.
 

 Facts
 

 The State's evidence tended to show the following. On 15 March 2011, Patrick Keen got off work and drove a white Hyundai Azera to Nedham Boric's apartment to sell him marijuana. He had visited this same apartment, on Shady Oaks Trail, about five or six times before for the same reason. When he arrived, he saw Mr. Boric walking his dogs out front, and they both went upstairs to Mr. Boric's second floor apartment. When Mr. Keen entered the apartment, he saw three African American men, two of whom he recognized and knew by nicknames. One of the men was defendant, whom Mr. Keen knew as "D." Mr. Keen identified defendant in the courtroom as the man he knew as "D." Mr. Keen had
 
 *817
 
 seen defendant at Mr. Boric's apartment "[o]nce or twice" before. Mr. Keen greeted the men, but they did not respond, which he thought was "a little awkward and strange." He sat down on the couch. Defendant then walked into the hallway and returned with a "white and blue" bandana covering his face under his eyes and holding a shotgun. Defendant pointed the shotgun at Mr. Keen's head while the other two men just stood there and watched.
 

 Mr. Keen asked "why I was getting robbed," and defendant said " 'I'm being serious.' " The other two men then took the keys to Mr. Keen's Hyundai, as well as his wallet, phone, and book bag, which contained the marijuana. Defendant then hit him in the back of the head with the butt of the shotgun and the men walked him to a bedroom in the back of the apartment and told him that if he moved or said anything, they would kill him. They made him lie down on the bed and tied his hands behind his back with duct tape, tied his ankles with duct tape, and put a sheet over him. Mr. Keen estimated that he stayed there for about two hours, although he had no way of telling the time.
 

 Hearing no noises from the apartment, eventually he broke the tape off and checked to make sure no one was in the apartment. He tried to get out the front door of the apartment but it was locked from the outside. He then climbed out the back balcony to the apartment next door, but no one answered when he knocked on the door. He forced the
 
 *185
 
 door open and entered the apartment, where he found a couple who then called 911. According to the police records, the call came in at about 9:47 p.m. Mr. Keen tried to explain to them than he was not there to harm them but was trying to escape from the apartment next door. He still had some duct tape on his leg. The police arrived in a few minutes. After the police came, they went out to the parking lot to find the white Hyundai Azera, but it was missing and was never recovered.
 

 Ms. Konnie Krueger estimated that at about 6:00 p.m. that same day, 15 March 2011, she went out to walk her dog. She lived in a condominium on Meadowlark Lane in Charlotte, N.C. Her condominium was very close to Shady Oaks Trail, in a complex which "back[ed] up" to the apartments where Mr. Keen was robbed. While she was walking the dog in the parking lot, two men passed her; she said hello to them and they said hello to her. She then saw a white car with four doors circle around the parking lot twice. While she was getting her dog and holding an umbrella, she saw a man get out of the back seat of the white car. He began to walk toward her and she saw that he was holding something "long and shiny" which she initially thought was an umbrella since it was raining, but then she realized it was a shotgun. The man was African
 
 *818
 
 American, a "big man," and was wearing a hoody and a dark blue or black bandanna covering his lower face. He then put the gun to her head and said " 'Give me all your money, bitch.' " She initially laughed, thinking "this couldn't be happening to me. I was in ducky pajamas and a hoody." But the man then pointed the gun at her knee and said, " 'Bitch, I'll blow your head off. This ain't a joke.' "
 

 From that moment on, she testified that she "stared directly in his eyes." He told her to give him her money, and she at first said she did not have any, but then felt that she had $3.00 in her pocket. He grabbed the $3.00, a pack of cigarettes, and her medication. He then told her to "get in the place" and she said that she did not live there. He turned to walk away, but then turned back and grabbed her cell phone, saying, " 'You effin' bitch, you ain't going to call the cops-po-pos on me.' " Defendant then got into the back seat on the left-hand side of the white car and it sped off. Police were called to the scene of Ms. Krueger's robbery at about 9:20 p.m.
 

 Later on the same evening, both Mr. Keen and Ms. Krueger were separately shown photo lineups and both ultimately identified the same photo as the man who had held a gun to their heads and robbed them. At trial, Ms. Krueger testified that she was "[a]bsolutely" certain that the man shown in photograph 2 of State's exhibit 8 was the man who robbed her, "[b]ecause I never took my-once I knew it was for real, I looked into his eyes the whole time, and I would know those eyes today. They haunt me." Mr. Keen identified the man in the photograph with 95% certainty as "the guy that held a shotgun in my face and hit me on the back of the head" and robbed him.
 

 On 13 June 2014, a jury found defendant guilty of one count of armed robbery and one count of conspiracy to commit armed robbery, both regarding victim Konnie Krueger, but was unable to reach a verdict on the three other charges. The trial court declared a mistrial as to the charges of robbery with a firearm, conspiracy to commit robbery with a firearm, and first degree kidnapping, all regarding victim Patrick Keen. The trial court entered judgment upon the one count of robbery with a dangerous weapon and one count of conspiracy to commit robbery with a dangerous weapon, both as to the charges involving Ms. Krueger, and defendant properly gave notice of appeal in open court.
 

 Discussion
 

 Defendant raises two issues on appeal, arguing (1) that the trial court erred by denying his motion to dismiss one of the conspiracy charges and (2) that the court plainly erred when it admitted photographic
 
 *819
 
 lineup evidence identifying defendant as the perpetrator of the robberies at issue.
 

 I. Sufficiency of evidence of conspiracy
 

 Defendant first contends that the "trial court erred by denying [defendant's] motion to dismiss conspiracy in 11 CRS 212908 because evidence that a man exited a car wearing a bandana over his face failed to establish
 
 *186
 
 [defendant] and another person entered an express agreement or mutually implied understanding to commit robbery with a firearm." Defendant argues that the trial court should have granted his motion to dismiss because the State failed to present sufficient evidence of the existence of a conspiracy between defendant and another person to rob Ms. Krueger.
 

 Our Supreme Court has previously explained that when reviewing a defendant's motion to dismiss:
 

 the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied. If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed. In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve. The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both. Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether
 
 *820
 
 the facts,
 
 taken singly or in combination,
 
 satisfy it beyond a reasonable doubt that the defendant is actually guilty.
 

 Both competent and incompetent evidence must be considered. In addition, the defendant's evidence should be disregarded unless it is favorable to the State or does not conflict with the State's evidence. The defendant's evidence that does not conflict may be used to explain or clarify the evidence offered by the State. When ruling on a motion to dismiss, the trial court should be concerned only about whether the evidence is sufficient for jury consideration, not about the weight of the evidence.
 

 State v. Fritsch,
 

 351 N.C. 373
 
 , 378-79,
 
 526 S.E.2d 451
 
 , 455-56 (2000) (citations, quotation marks, and brackets omitted).
 

 Defendant argues that since he was charged with two separate counts of conspiracy-one to commit armed robbery of Mr. Keen and one to commit armed robbery of Ms. Krueger-the State must present sufficient evidence to establish that defendant entered into two separate agreements to commit the unlawful acts. Defendant claims that "at most, [the] evidence showed [that] one man exited the backseat of a car, robbed Krueger, and returned to the backseat of a car. Nothing suggested [defendant] conspired with [Nedham] Boric as alleged in the indictment. Nothing suggested [defendant] conspired with any other person to commit robbery with a firearm" of Ms. Krueger.
 

 The State responds that "there was circumstantial evidence that tended to show that defendant had agreed with the other individuals at Nedham Boric's apartment to rob Ms. Krueger." The evidence showed that defendant pointed a gun at Mr. Keen while the other two men took his property, including his car keys, taped him up, and then took his white Azera. Just after this robbery, at an adjoining complex parking lot, Ms. Krueger saw a white car circling the lot just before the car stopped and defendant got out of the back seat and robbed her. The State contends that "[t]aken together, this evidence is sufficient to show that defendant knew in advance that a robbery was going to occur, that he participated with at least one other individual, namely the person driving the car, in the robbery with each having preassigned roles and that defendant and at least one other individual conspired to commit the robbery." Defendant's argument on appeal focuses only on the facts of the occurrences in the parking lot, when a man
 
 *187
 
 got out of a car and robbed Ms. Krueger. But the evidence presented at trial also encompassed the
 
 *821
 
 incidents which occurred just before, in Mr. Boric's apartment, and all of the evidence taken together supports the State's theory.
 

 We first note that although defendant was charged with two counts of conspiracy, one as to Mr. Keen and one as to Ms. Krueger, he was convicted only of one count, so we need not determine if the State's evidence can support more than one agreement to commit unlawful acts against more than one victim. Even where multiple crimes are committed, there may be only one conspiracy, or agreement to commit a series of acts.
 

 It is well established that the gist of the crime of conspiracy is the agreement itself, not the commission of the substantive crime. It is also clear that where a series of agreements or acts constitutes a
 
 single
 
 conspiracy, a defendant cannot be subjected to multiple indictments consistently with the constitutional guarantee against double jeopardy. Defining the scope of a conspiracy or conspiracies remains a thorny problem for the courts. This Court has affirmed multiple conspiracy convictions arising from multiple substantive narcotics offenses involving a single amount of drugs found on a single occasion, apparently on the theory that each conspiracy involved separate elements of proof, and represented a separate agreement. However, under North Carolina law multiple overt acts arising from a single agreement do not permit prosecutions for multiple conspiracies. There is no simple test for determining whether single or multiple conspiracies are involved: the essential question is the nature of the agreement or agreements, but factors such as time intervals, participants, objectives, and number of meetings all must be considered.
 

 It is only proper that the State, having elected to charge separate conspiracies, must prove not only the existence of at least two agreements but also that they were separate.
 

 State v. Rozier,
 

 69 N.C.App. 38
 
 , 52-53,
 
 316 S.E.2d 893
 
 , 902 (1984) (citations omitted).
 

 If defendant had been convicted of both counts of conspiracy, as to the crimes alleged against both Mr. Keen and Ms. Krueger, we would face the "thorny problem" of the scope of the conspiracy.
 
 Id.
 
 at 52,
 
 316 S.E.2d at 902
 
 . Did defendant and the other men agree to take Mr. Keen's
 
 *822
 
 car and go out to commit other robberies, which would be one conspiracy to commit multiple crimes, or did they agree to rob Mr. Keen and then separately agree to take his car and go out to rob someone else, thus making two separate agreements? But we need not make that determination, since defendant was convicted of only one count of conspiracy and the evidence supports the existence of at least one agreement to commit unlawful acts.
 

 Defendant draws comparisons from
 
 State v. Wellborn,
 

 229 N.C. 617
 
 , 621,
 
 50 S.E.2d 720
 
 , 723 (1948), where our Supreme Court found insufficient evidence of conspiracy and reversed the defendant's conviction. In
 
 Wellborn,
 
 the defendant was charged with conspiring with another individual, Guy Cain, to feloniously assault another man, Hubert Wells, with a deadly weapon with intent to kill.
 
 Id.
 
 at 617,
 
 50 S.E.2d at 720
 
 . The State's evidence, however, was "confined to the circumstance of [the defendant] being seen with Cain a few times that night and that he accompanied Cain in the pickup truck when following the Wells car to the place of the fight."
 
 Id.
 
 at 618,
 
 50 S.E.2d at 721
 
 . In reversing the conspiracy conviction, the Supreme Court concluded that "there [was] no evidence that Cain had ever communicated to [defendant] his purpose or that prior to the actual fatal encounter [defendant] had any knowledge of the intent."
 

 Id.
 

 But here, the State presented evidence at trial tending to show that defendant acted in concert with other individuals, first to rob Mr. Keen and then, after stealing his car, Ms. Krueger.
 

 Although the evidence is circumstantial, it does support the inference that defendant and the other men in Boric's apartment agreed to take Mr. Keen's car and to go on to commit other unlawful acts, with defendant wielding the shotgun and another person driving the car. The acts against Ms. Krueger occurred within minutes after defendant and the other men tied up Mr. Keen
 
 *188
 
 and took his car. Ms. Krueger was in a parking lot very near Mr. Boric's apartment, and the jury could easily infer that defendant pointed the same shotgun at Ms. Krueger and was wearing the same blue bandana over his face, as described by Mr. Keen. Accordingly, we find that the trial court did not err by denying defendant's motion to dismiss.
 

 2. Plain error in admission of photo lineup evidence
 

 Defendant next argues that the "admission of irrelevant photo lineup evidence constituted plain error because without the erroneously admitted evidence, it is probable the jury would have reached a different result on the offenses involving Kruger." Defendant acknowledges that he did not object at trial to the admission of the photographs identified
 
 *823
 
 in the photo lineups by both Mr. Keen and Ms. Krueger as the man who robbed them and that they were admitted as substantive evidence and published to the jury without objection. Defendant argues that the admission is plain error because the photos were " irrelevant and inadmissible as substantive evidence" where "no witness with knowledge testified that [defendant] was in fact the person depicted in photo 2 or 5." Defendant contends that without these photographs, the jury would likely have reached a different decision.
 

 Because defendant did not object to the admission of the photos at trial, we review this issue for plain error.
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
 

 State v. Lawrence,
 

 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (citations, quotation marks, and brackets omitted).
 

 We agree that without the admission of Photographs 2 and 5, it is probable that the jury would have reached a different result, since these photographs were a key piece of evidence identifying defendant as the person who both stole Mr. Keen's car and then robbed Ms. Krueger. Thus, we must consider whether the photos were properly authenticated and relevant.
 

 We generally review the trial court's decision to admit evidence for abuse of discretion, looking to whether the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision. However, with regard to a determination on the relevancy of evidence, a trial court's rulings technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403 ; nonetheless, such rulings are given great deference on appeal.
 

 State v. Murray,
 

 229 N.C.App. 285
 
 , 287-88,
 
 746 S.E.2d 452
 
 , 454 (2013) (citations, quotation marks, ellipses, and brackets omitted).
 

 *824
 
 Defendant argues that since no one testified that defendant was "the person depicted in any photo identified by [Mr.] Keen or [Ms.] Krueger, the photos were irrelevant and inadmissible." For a photo to be admissible as substantive evidence, "it must first be properly authenticated by a witness with knowledge that the evidence is in fact what it purports to be."
 
 State v. Lee,
 

 335 N.C. 244
 
 , 270,
 
 439 S.E.2d 547
 
 , 560 (1994). In addition, it must be "properly authenticated as a correct portrayal of the person depicted."
 

 Id.
 

 N.C. Gen.Stat. § 8-97 provides that any party may introduce a photograph as substantive evidence upon laying a proper foundation and meeting other applicable evidentiary requirements. Rule 901 of our Rules of Evidence requires authentication or identification by evidence sufficient to support a finding that the matter in question is what its proponent claims. In order for a photograph to be introduced, it must first be properly authenticated by a witness with knowledge that the evidence is in fact what it purports to be.
 

 *189
 

 Murray,
 

 229 N.C.App. at 288
 
 ,
 
 746 S.E.2d at 454-55
 
 (citations and quotation marks omitted).
 

 In
 
 Murray,
 
 an informant who purchased drugs from the defendant as part of a controlled buy and the detective conducting the buy testified to authenticate the photographs of the defendant challenged in that case.
 

 Id.,
 

 746 S.E.2d at 455
 
 . Three photos, Exhibits 7, 8, and 9, were admitted, and each depicted a different person.
 

 Id.
 

 The informant testified that he knew the individuals in the photos as "people from whom he had bought drugs in the past" and that he had "picked each of them out of a photo lineup the night before."
 

 Id.
 

 He also testified that one of the photos, Exhibit 9, "was the person from whom he bought drugs on 18 January 2011 [the date of the alleged crime] and that the person was Defendant."
 

 Id.
 

 This Court held that this testimony was sufficient to authenticate all of the photos, and as relevant for our purposes here, to authenticate Exhibit 9 as a photograph of defendant, stating:
 

 We believe this testimony was sufficient to authenticate Exhibits 7 and 8 as photographs of people from whom Mr. West purchased drugs in the past. We further believe this testimony was sufficient to authenticate Exhibit 9 as Defendant, such that it was properly admitted.
 

 Id.
 

 (citation omitted).
 

 *825
 
 In the present case, Mr. Keen testified that he had previously met defendant at Mr. Boric's apartment and knew him as "D." He identified Photograph 5 as the man who held a gun to his head and robbed him when he viewed the photo lineup and he identified defendant in the courtroom at trial as well. Mr. Keen's testimony, like that of the informant in
 
 Murray,
 
 is sufficient to authenticate Photograph 5 as a photograph of defendant.
 

 Photograph 2 was admitted during Ms. Krueger's testimony, and unlike Mr. Keen, she did not know defendant and she did not identify him in court as the person who robbed her. She did testify that Photograph 2 depicted the person who robbed her. Defendant argues that "the State did not call any witness who compiled, administered, or had any knowledge about the source of any photo or the identity of the person depicted in any photo included in any photo lineup. The State wholly failed to elicit testimony from any witness with knowledge that the purported photos of [defendant] actually depicted [defendant.]"
 

 Since our review of this issue is for plain error, we first note that if defendant had objected at trial, the State would have had the opportunity to provide further foundation for the admission of Photographs 5 and 2. In
 
 State v. Howard,
 

 215 N.C.App. 318
 
 , 327,
 
 715 S.E.2d 573
 
 , 579 (2011), the defendant claimed that the trial court committed plain error in admitting "Wal-Mart receipts and photos captured from the Wal-Mart surveillance video" because they were not properly authenticated. This Court found no plain error because the State would have been able to provide additional foundation, had defendant made a timely objection at trial.
 
 Id.
 
 at 327-28,
 
 715 S.E.2d at 580
 
 .
 

 North Carolina Rule of Evidence 901(a) states the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. North Carolina Rule of Evidence 1002, known as the best evidence rule states, to prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute. Rule 1003, Admissibility of Duplicates, provides [that] a duplicate is admissible to the same extent as an original unless (1) a genuine issue is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.
 

 *826
 
 Based upon our review of the record, it appears that if defendant had made a timely objection, the State could have supplied the necessary foundation. Had defendant objected to the evidence now challenged the State could have properly authenticated it and either provided the originals of the social security card and receipts to comply with the best evidence rule or explained why admission of duplicates was appropriate. Since defendant has made no showing that the foundational prerequisites,
 
 *190
 
 upon objection, could not have been supplied and has pointed to nothing suggesting that the evidence in question is inaccurate or otherwise flawed, we decline to conclude the omissions discussed above amount to plain error.
 

 Id.
 
 at 327,
 
 715 S.E.2d at 579-80
 
 (citations, quotation marks, ellipses, and brackets omitted).
 

 In addition, we note that Photograph 5 identified by Mr. Keen and Photograph 2 identified by Ms. Krueger are the
 
 same
 
 photograph of the same person. They were given different numbers in the photographic lineups and were identified as separate exhibits for trial, but they are identical photographs. Thus, for purposes of plain error review, the authentication of Photograph 5 is also sufficient to authenticate Photograph 2.
 

 Defendant also argues that the photographs were irrelevant because no witness testified that the person in the photographs was defendant. Defendant notes that "the State did not call any witness who compiled, administered, or had any knowledge about the source of any photo or the identity of the person depicted in any photo included in any photo lineup."
 
 [1]
 
 Defendant's argument seem to suggest that we should
 
 require
 
 lay opinion testimony to identify the person depicted in the photographs as defendant. This argument is the flip-side of the argument we typically see, which is an objection to lay opinion testimony, often from a law enforcement officer, that the person shown in a photograph or video is
 
 *827
 
 the defendant. In those cases, the defendants argue that the jury should be able to determine if the defendant was the person depicted in the photograph. For example, in
 
 State v. Hill,
 
 ---N.C.App. ----, ----,
 
 785 S.E.2d 178
 
 , 181 (2016), the defendant argued on appeal that the law enforcement officers should not have been permitted to " give their lay opinions that the person in the surveillance videos was Hill. Specifically, Hill alleges the officers were no better qualified than the jury to identify the suspect in the videos and, therefore, he was prejudiced by the admission of their testimony."
 

 This Court rejected the defendant's argument in
 
 Hill,
 
 based upon the fact that the officers were familiar with defendant before the incident in question and that his appearance had changed between the time of his arrest and trial.
 

 Id.
 

 at ----,
 
 785 S.E.2d at 182
 
 . We noted that "[a]dmissible lay opinion testimony is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."
 

 Id.
 

 at ----,
 
 785 S.E.2d at 181
 
 (quotation marks omitted). Here, defendant argues that the officers or some other witness should have been required to identify the person depicted in the photographs as defendant. We can find no support for any such requirement. The jury was well able to look at the photographs identified by Mr. Keen and Ms. Krueger as the person who robbed them and to look at the defendant sitting in the courtroom and draw their own conclusions about whether he was the person depicted in the photographs. In fact, we do not have this advantage on appeal, since our record does not show us what the defendant looked like in the courtroom at trial. In any event, defendant has not demonstrated any error in the admission of Photographs 2 and 5, much less any plain error.
 

 For the reasons above, we find no error in the defendant's trial.
 

 NO ERROR.
 

 Judges DIETZ and TYSON concur.
 

 [1]
 

 N.C. Gen.Stat. § 15A-284.52 (2015) requires that photographic lineups be conducted by an "independent administrator" who is "not participating in the investigation of the criminal offense and is unaware of which person in the lineup is the suspect." Defendant did not raise any argument regarding how the lineup was conducted, and to the extent that we can tell from our record, it appears to have been done generally in accord with the procedure which is now required. In any event, it would seem to be entirely appropriate that the person who compiled or administered the lineups would
 
 not
 
 be able to identify defendant.