DAVIS, Judge.
 

 In this appeal, we consider whether (1) the defendant's indictment was fatally defective because it misspelled his middle name and misidentified his race and date of birth; (2) the State presented sufficient evidence of an agreement between the defendant and another person to rob the victim in order to support a conspiracy charge; and (3) the defendant's right to due process was violated by the compelled appearance of the mother of his child as a witness for the prosecution. Dominic Rashaun Stroud ("Defendant") appeals from his convictions for robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. After a thorough review of the record and applicable law, we conclude that Defendant received a fair trial free from error.
 

 Factual and Procedural Background
 

 The State presented evidence at trial tending to establish the following facts: On 4 January 2015 at approximately 5:00 p.m., Terry Maddox, Jr. went to Optimist Park in Shelby, North Carolina to meet a woman that he knew only though Facebook as "Shay." Following his arrival at the park, the two of them sat on benches in the picnic shelter area, and Maddox prepared to smoke
 
 *708
 
 marijuana that the woman had brought with her.
 

 Maddox was suddenly struck on the head and fell to the ground. He saw two masked men holding firearms. One of them held a rifle, and the other possessed a handgun. One of the men told Maddox to remove his shoes, and he did so. The men then took his car keys, cell phone, and gold watch.
 

 That afternoon, Officer Donald Bivins of the Shelby Police Department was dispatched to a house at 904 Hampton Street-which was located approximately 100 yards from Optimist Park-after dispatch received a call of "shots fired" in the area of the park. Upon entering the house, Officer Bivins and another officer observed a white male and a black male in the living room. The officers also encountered a black male sleeping in one bedroom and a white female lying on the floor of another bedroom.
 

 As a means of securing the house, the officers instructed the occupants of the home to go into the living room. While in the living room, Officer Bivins observed a bullet from a rifle on the floor next to the couch. When he leaned down to inspect the bullet, he discovered that a rifle was also present underneath the couch. Officer Bivins further observed a second bullet located between the cushions of a loveseat in the living room. Behind the loveseat was a .9 millimeter Glock handgun that was not loaded. Under a blanket in the carport, Officer Bivins found a .45 caliber Glock handgun.
 

 Officer Matthew Dyer of the Shelby Police Department was also dispatched to the Optimist Park area that evening. He encountered Maddox, who informed Officer Dyer that he could identify the persons who had robbed him. After coordinating with the officers at 904 Hampton Street, Officer Dyer took Maddox to the residence "for a show-up to identify the suspects that robbed him." An officer stationed at the home directed three persons to step outside the house, and Maddox identified all three of the individuals as the persons who had robbed him. The persons identified by Maddox were Defendant, Abreanne LaShea Bowen (the mother of Defendant's child), and Joey Raborn (a friend of Defendant). All three were placed into custody and taken to the Shelby Police Department for questioning.
 

 Shortly thereafter, Bowen was interviewed by Detective Matt Styers of the Shelby Police Department. During the interview, she admitted that she was with Defendant at 904 Hampton Street prior to contacting Maddox and arranging a meeting with him at Optimist Park. She stated that she had set up the meeting in order to retaliate against Maddox for having previously robbed her cousin. Bowen told Detective Styers that she, Defendant, and Raborn had all been present at Optimist Park earlier that day. She further stated that when she saw Defendant and Raborn approaching the bench where she and Maddox were sitting she immediately ran back to the house at 904 Hampton Street.
 

 Bowen also told Detective Styers that by the time Defendant and Raborn returned to 904 Hampton Street from Optimist Park "the police were already circling the block." During his interview with Detective Styers, Defendant agreed to Bowen's account of the events, stating: "That's what happened. She said we did it for her cousin, so that's what happened."
 

 Detective Lee Farris also investigated the incident. He examined the picnic shelter area and found a small amount of marijuana, a .45 caliber shell casing, and a damaged gold watch.
 

 Detective Farris subsequently executed a search warrant on the house located at 904 Hampton Street. Inside the residence, he discovered a piece of a gold watchband matching the damaged watch he had found at Optimist Park.
 

 Defendant was indicted by a grand jury on 12 January 2015 for robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. A jury trial was held beginning on 16 February 2017 before the Honorable Robert C. Ervin in Cleveland County Superior Court. At the close of the State's evidence, Defendant moved to dismiss both charges, and the trial court denied the motion. He renewed his motion to dismiss at the close of all the evidence, which was also denied.
 

 *709
 
 On 20 February 2017, the jury found Defendant guilty of both charges. The trial court sentenced Defendant to a term of 72 to 99 months imprisonment. Defendant gave oral notice of appeal.
 

 Analysis
 

 I. Sufficiency of Indictment
 

 In his first argument on appeal, Defendant contends that the trial court lacked jurisdiction to enter judgment against him because his indictment was fatally defective. He asserts that because the indictment misspelled his middle name and incorrectly identified his race and date of birth, it failed to "clearly and positively identify [Defendant] as the perpetrator of the charged offense."
 

 Defendant did not challenge the sufficiency of the indictment at trial. However, it is well-established that "when an indictment is alleged to be facially invalid, thereby depriving the trial court of its jurisdiction, it may be challenged at any time, notwithstanding a defendant's failure to contest its validity in the trial court."
 
 State v. Call
 
 ,
 
 353 N.C. 400
 
 , 429,
 
 545 S.E.2d 190
 
 , 208 (citation omitted),
 
 cert. denied
 
 ,
 
 534 U.S. 1046
 
 ,
 
 122 S.Ct. 628
 
 ,
 
 151 L.Ed.2d 548
 
 (2001). We review the sufficiency of an indictment
 
 de novo
 
 .
 
 State v. Marshall
 
 ,
 
 188 N.C. App. 744
 
 , 748,
 
 656 S.E.2d 709
 
 , 712 (citation omitted),
 
 disc. review denied
 
 ,
 
 362 N.C. 368
 
 ,
 
 661 S.E.2d 890
 
 (2008).
 

 This Court has held that "[a] valid bill of indictment is essential to the jurisdiction of the Superior Court to try an accused for a felony...."
 
 State v. Moses
 
 ,
 
 154 N.C. App. 332
 
 , 334,
 
 572 S.E.2d 223
 
 , 226 (2002) (citation omitted). An indictment "is constitutionally sufficient if it apprises the defendant of the charge against him with enough certainty to enable him to prepare his defense and to protect him from subsequent prosecution of the same offense."
 
 State v. Jones
 
 ,
 
 188 N.C. App. 562
 
 , 564,
 
 655 S.E.2d 915
 
 , 917 (2008) (citation and quotation marks omitted).
 

 In the present case, Defendant's middle name was incorrectly spelled in the indictment as "Rashawn." His actual middle name is "Rashaun." Our Supreme Court has held that "[a]n indictment must clearly and positively identify the person charged with the commission of the offense."
 
 State v. Simpson
 
 ,
 
 302 N.C. 613
 
 , 616,
 
 276 S.E.2d 361
 
 , 363 (1981) (citation omitted). "The name of the defendant, or a sufficient description if his name is unknown, must be alleged in the body of the indictment; and the omission of his name, or a sufficient description if his name is unknown, is a fatal and incurable defect."
 
 Id
 
 . (citation omitted).
 

 In
 
 State v. Higgs
 
 ,
 
 270 N.C. 111
 
 ,
 
 153 S.E.2d 781
 
 (1967), our Supreme Court held that minor mistakes in the spelling of a defendant's name in an indictment do not-without more-render the indictment defective.
 
 Id
 
 . at 113,
 
 153 S.E.2d at 782
 
 . In that case, the defendant's given name was Burford Murril Higgs. However, the indictment listed his name as Beauford Merrill Higgs.
 

 Id.
 

 In ruling that the indictment was sufficient, the Supreme Court concluded as follows:
 

 On the trial, no point was made of the slight variance in the given names of
 
 Beauford
 
 and
 
 Burford
 
 and of the slight variance in the spelling of the middle name, and defendant will not now be heard to say that he is not the man named in the bill of indictment. Where defendant is tried without objection under one name, and there is no question of identity, he will not be allowed on appeal to contend that his real name was different.
 

 Id
 
 . (citation and quotation marks omitted);
 
 see also
 

 State v. Vincent
 
 ,
 
 222 N.C. 543
 
 , 544,
 
 23 S.E.2d 832
 
 , 833 (1943) ("Here, the two names, 'Vincent' and 'Vinson,' sound almost alike. ... He was tried under the name of Vincent, without objection or challenge, and sentenced under the same name. There being no question as to his identity, he may retain the name for purposes of judgment." (citation omitted) ).
 

 In the present case, the misspelling of Defendant's middle name in the indictment differed by only one letter from the correct spelling. As shown above, our appellate courts have made clear that such minor spelling errors do not render an indictment defective absent a showing that the defendant was prejudiced by the error in preparing his defense.
 
 See
 

 Higgs
 
 ,
 
 270 N.C. at 113
 
 ,
 
 153 S.E.2d at 782
 
 . Defendant has made no such showing here.
 

 *710
 
 In addition to the misspelling of his middle name, the indictment also contained two other mistakes. First, it listed his race as white despite the fact that he is black. Second, his date of birth was set out in the indictment as 31 August 1991 when, in fact, his correct birth date is 2 October 1991. Neither of these mistakes, however, caused Defendant's indictment to be defective.
 

 "Allegations beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage."
 
 State v. Taylor
 
 ,
 
 280 N.C. 273
 
 , 276,
 
 185 S.E.2d 677
 
 , 680 (1972). This Court has held that "a mistake in such information which is mere surplusage may be ignored if its inclusion has not prejudiced defendant."
 
 State v. Sisk
 
 ,
 
 123 N.C. App. 361
 
 , 366,
 
 473 S.E.2d 348
 
 , 352 (1996) (citation omitted),
 
 aff'd in part
 
 ,
 
 345 N.C. 749
 
 ,
 
 483 S.E.2d 440
 
 (1997).
 

 In
 
 State v. Oliver
 
 ,
 
 302 N.C. 28
 
 ,
 
 274 S.E.2d 183
 
 (1981), the defendant argued that his indictment was fatally defective because it "described him as being a resident of Robeson County when in fact he resided in Columbus County."
 
 Id
 
 . at 43,
 
 274 S.E.2d at 193
 
 . Our Supreme Court held that the indictment was sufficient despite the error.
 

 Defendant's argument is, of course, frivolous. His residence is immaterial. General Statute 15A-924 requires a criminal pleading to contain the name or other identification of the defendant. The indictments contained defendant's name. The allegations as to his county of residence, if this is what was intended by the language in the indictment, is at most surplusage. Consequently any such error is not fatal.
 

 Id
 
 . (internal citation, quotation marks, ellipsis, and brackets omitted).
 

 Defendant concedes in his brief that no requirement exists that an indictment include the race or date of birth of a defendant. Instead, he argues, the "cumulative effect of these errors resulted in an indictment that was fatally defective for not clearly and positively identifying the person charged with the commission of the alleged offenses." We disagree.
 

 As noted above, a valid indictment need only contain "[t]he name of the defendant, or a sufficient description if his name is unknown[.]"
 
 Simpson
 
 , 302 N.C. at 616,
 
 276 S.E.2d at 363
 
 . Thus, the inaccuracies concerning his race and date of birth constitute "mere surplusage" that "may be ignored if its inclusion has not prejudiced defendant."
 
 Sisk
 
 ,
 
 123 N.C. App. at 366
 
 ,
 
 473 S.E.2d at 352
 
 (citation omitted).
 

 Defendant makes no contention in this appeal that he was prejudiced in his ability to defend himself against the charges contained in his indictment as a result of these errors. Therefore, although admittedly the indictment was not a model of precision, we are satisfied that it was not fatally defective.
 
 [1]
 

 II. Denial of Motion to Dismiss Conspiracy Charge
 

 Defendant next argues that the trial court erred in failing to grant his motion to dismiss the charge of conspiracy to commit armed robbery with a dangerous weapon. He contends that the State presented insufficient evidence of the existence of an agreement between Defendant and another person to rob Maddox so as to allow this charge to be submitted to the jury.
 

 "A trial court's denial of a defendant's motion to dismiss is reviewed
 
 de novo
 
 ."
 
 State v. Watkins
 
 , --- N.C. App. ----, ----,
 
 785 S.E.2d 175
 
 , 177 (citation omitted),
 
 disc. review denied
 
 ,
 
 369 N.C. 40
 
 ,
 
 792 S.E.2d 508
 
 (2016). On appeal, this Court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the
 
 *711
 
 perpetrator[.]"
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (citation omitted),
 
 cert. denied
 
 ,
 
 531 U.S. 890
 
 ,
 
 121 S.Ct. 213
 
 ,
 
 148 L.Ed.2d 150
 
 (2000).
 

 Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith
 
 ,
 
 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980) (citation omitted). Evidence must be viewed in the light most favorable to the State with every reasonable inference drawn in the State's favor.
 
 State v. Rose
 
 ,
 
 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994),
 
 cert. denied
 
 ,
 
 515 U.S. 1135
 
 ,
 
 115 S.Ct. 2565
 
 ,
 
 132 L.Ed.2d 818
 
 (1995). "Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal."
 
 Smith
 
 ,
 
 300 N.C. at 78
 
 ,
 
 265 S.E.2d at 169
 
 (citation omitted).
 

 A criminal conspiracy is an agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful manner. In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice. This evidence may be circumstantial or inferred from the defendant's behavior.
 

 State v. Shelly
 
 ,
 
 176 N.C. App. 575
 
 , 586,
 
 627 S.E.2d 287
 
 , 296 (2006) (internal citations and quotation marks omitted). This Court has recognized that "[d]irect proof of conspiracy is rarely available, so the crime must generally be proved by circumstantial evidence."
 
 State v. Oliphant
 
 ,
 
 228 N.C. App. 692
 
 , 703,
 
 747 S.E.2d 117
 
 , 125 (2013) (citation and quotation marks omitted),
 
 disc. review denied
 
 ,
 
 367 N.C. 289
 
 ,
 
 753 S.E.2d 677
 
 (2014).
 

 In
 
 Oliphant
 
 , the defendants were convicted of conspiracy to commit robbery with a dangerous weapon.
 
 Id
 
 . at 694,
 
 747 S.E.2d at 120
 
 . The evidence showed that they had approached the victim from behind as she walked alone late at night.
 
 Id
 
 . at 704,
 
 747 S.E.2d at 125
 
 . One defendant held a gun while the other defendant took the victim's cell phone and pocketbook. In reviewing the sufficiency of the evidence to support the offense of conspiracy to commit armed robbery, we reasoned that the behavior of the defendants demonstrated "a mutual implied understanding that they would together approach the victim, and with the aid of a firearm, relieve her of her possessions[.]"
 
 Id
 
 . As a result, we held that sufficient evidence had been presented of a conspiracy to survive the defendant's motion to dismiss.
 
 Id
 
 .
 

 State v. Young
 
 , --- N.C. App. ----,
 
 790 S.E.2d 182
 
 (2016), involved two separate robberies committed in similar fashion that occurred in close geographic and temporal proximity to one another.
 
 Id
 
 . at ----,
 
 790 S.E.2d at 184-85
 
 . The evidence showed that the defendant-who was ultimately convicted of conspiracy to commit armed robbery-wore a blue bandana over his face and pointed a shotgun at the first victim while the defendant's accomplices took his car keys.
 
 Id
 
 . at ----,
 
 790 S.E.2d at 184
 
 . They then stole the victim's car and drove to a nearby apartment complex where the defendant robbed the second victim.
 
 Id
 
 . at ----,
 
 790 S.E.2d at 185
 
 . Both victims later identified the defendant from photo lineups as the person who had robbed them.
 
 Id
 
 . at ----,
 
 790 S.E.2d at 185
 
 . This Court held that the trial court did not err in denying the defendant's motion to dismiss the conspiracy charge, concluding that "[a]lthough the evidence is circumstantial, it does support the inference that defendant and [his accomplices] agreed to take [the first victim's] car and to go on to commit other unlawful acts, with defendant wielding the shotgun and another person driving the car."
 
 Id
 
 . at ----,
 
 790 S.E.2d at 187
 
 .
 

 In the present case, Maddox identified Defendant, Raborn, and Bowen as the individuals who had robbed him. Furthermore, Defendant confirmed to Detective Styers the accuracy of Bowen's pre-trial statement that the robbery at Optimist Park was in retaliation for Maddox having previously robbed Bowen's cousin.
 

 Thus, sufficient evidence was offered at trial to establish Defendant's participation in a conspiracy to commit robbery with a dangerous weapon. Therefore, we hold that the trial court did not err in denying Defendant's motion to dismiss the conspiracy charge.
 

 III. Due Process
 

 Finally, Defendant contends that Bowen's compelled appearance at trial as a witness for the State violated his "due process
 
 *712
 
 right to a fair trial under the Sixth and Fourteenth Amendments." Specifically, he argues that the prosecutor improperly coerced Bowen into testifying by threatening to charge her with obstruction of justice if she refused to do so and by the prosecutor also telling Bowen that she would make inquiries on Bowen's behalf regarding possible visitation with Bowen's son if she agreed to testify for the State.
 

 It is well settled that constitutional issues "not raised and passed upon at trial will not be considered for the first time on appeal."
 
 State v. Garcia
 
 ,
 
 358 N.C. 382
 
 , 415,
 
 597 S.E.2d 724
 
 , 748 (2004) (citation and quotation marks omitted),
 
 cert. denied
 
 ,
 
 543 U.S. 1156
 
 ,
 
 125 S.Ct. 1301
 
 ,
 
 161 L.Ed.2d 122
 
 (2005). There is no indication in the record that Defendant asserted this argument in the trial court. Therefore, we deem the issue waived.
 
 See
 

 State v. Flippen
 
 ,
 
 349 N.C. 264
 
 , 276,
 
 506 S.E.2d 702
 
 , 709-10 (1998) (holding that defendant's failure to raise constitutional issue at trial waived appellate review of that question),
 
 cert. denied
 
 ,
 
 526 U.S. 1135
 
 ,
 
 119 S.Ct. 1813
 
 ,
 
 143 L.Ed.2d 1015
 
 (1999). However, even had Defendant properly preserved the issue, his argument lacks merit.
 

 "A defendant's sixth amendment right to present his own witnesses to establish a defense is a fundamental element of due process of law, and is therefore applicable to the states through the due process clause of the fourteenth amendment."
 
 State v. Melvin
 
 ,
 
 326 N.C. 173
 
 , 184,
 
 388 S.E.2d 72
 
 , 77 (1990) (citation omitted). Our Supreme Court has stated that "[w]hether judicial or prosecutorial admonitions to defense or prosecution witnesses violate a defendant's right to due process rests ultimately on the facts in each case."
 
 Id
 
 . at 187,
 
 388 S.E.2d at 79
 
 . However, "[w]itnesses should not be discouraged from testifying freely nor intimidated into altering their testimony."
 
 Id
 
 .
 

 The prosecutor in
 
 Melvin
 
 repeatedly threatened two witnesses for the State with perjury in the days leading up to trial if they changed their testimony.
 
 Id
 
 . at 182-83,
 
 388 S.E.2d at 76-77
 
 . He also engaged in a shouting match with the witnesses during which he grabbed one of them "by the arm, used profanity, and threatened [them] with jail if they changed their story."
 
 Id
 
 . at 183,
 
 388 S.E.2d at 77
 
 . Our Supreme Court held that the defendant's due process rights had not been violated by the prosecutor's conduct for two reasons: (1) the prosecutor's actions did not prevent a witness "otherwise prepared to testify for a defendant, from doing so[;]" and (2) the prosecutor's conduct did not "result in any of the witnesses testifying more favorably for the State than they otherwise would have."
 
 Id
 
 . at 189-90,
 
 388 S.E.2d at 81
 
 .
 

 Conversely, this Court held in
 
 State v. Mackey
 
 ,
 
 58 N.C. App. 385
 
 ,
 
 293 S.E.2d 617
 
 ,
 
 appeal dismissed and disc. review denied
 
 ,
 
 306 N.C. 748
 
 ,
 
 295 S.E.2d 761
 
 (1982), that a new trial was required where a defense witness recanted his earlier testimony favoring the defendant after being threatened with perjury by a police detective and offered immunity by the District Attorney "if he would take the stand again and tell the truth."
 
 Id
 
 . at 387,
 
 293 S.E.2d at 618
 
 . We concluded that the witness's "intimidation by a police detective and the offer of immunity by the District Attorney, who are symbols of the government's power to prosecute offenders, likewise deprived defendant of due process of law."
 
 Id
 
 . at 388,
 
 293 S.E.2d at 619
 
 (citation omitted).
 

 Here, the following exchange took place between Bowen and the prosecutor at trial:
 

 [PROSECUTOR]: Abreanne, is it fair to say you don't want to be here?
 

 [BOWEN]: Yes, it is, 'cause I don't.
 

 [PROSECUTOR]: Did you and I have a conversation up in the jail?
 

 [BOWEN]: Um-hmm (affirmative), and you basically told me if I didn't get on the stand you was gonna criminally charge me with obstruction of justice.
 

 ....
 

 [PROSECUTOR]: Abreanne, did I tell you that I could get you a visit with your son, or did I tell you I would ask?
 

 [BOWEN]: You told me that you could get me a visit with my child and you would write the prison and ask them to get-you would write a report and ask them to give me game days.
 

 *713
 
 [PROSECUTOR]: I told you that I was in charge of visitation?
 

 [BOWEN]: No, but you told me that you could possibly get me a visit with my son, yes.
 

 Throughout her direct examination, Bowen either remained silent in response to the prosecutor's questions concerning the 4 January 2015 incident or simply stated that she did not want to answer the question. Ultimately, the State requested permission from the trial court to treat Bowen as a hostile witness and ask her leading questions. After the court granted her request, the prosecutor asked Bowen about her pre-trial statement to Detective Styers.
 

 [PROSECUTOR]: And you told the officer that the three people in custody were the ones that did it, right?
 

 [BOWEN]: (No audible response)
 

 [PROSECUTOR]: Right, Abreanne?
 

 [BOWEN]: Yes, ma'am.
 

 [PROSECUTOR]: Okay, and [Defendant], even though he's the father of your baby, and you don't want to be here, he was one of the three, wasn't he?
 

 [BOWEN]: (No audible response)
 

 [PROSECUTOR]: He was one of the three, wasn't he?
 

 [BOWEN]: (No audible response)
 

 [PROSECUTOR]: Abreanne, can you tell the truth?
 

 [DEFENSE COUNSEL]: Objection.
 

 ....
 

 [PROSECUTOR]: Let me ask it this way. Did you tell the detective that interviewed you that [Defendant] was one of the three?
 

 [DEFENSE COUNSEL]: Objection.
 

 [THE COURT]: Do you recall telling the detective that?
 

 [BOWEN]: No, ma'am.
 

 [PROSECUTOR]: Okay, you don't recall that?
 

 [BOWEN]: (No audible response)
 

 ....
 

 [BOWEN]: I remember telling the detective that he didn't touch the guy's stuff or anything.
 

 [PROSECUTOR]: You remember telling the detective that [Defendant] didn't touch the guy or his stuff?
 

 [BOWEN]: Um-hmm (affirmative).
 

 [PROSECUTOR]: How do you know that?
 

 [BOWEN]: I remember telling him that.
 

 [PROSECUTOR]: Okay. Is that true?
 

 [BOWEN]: That I know of, yes, ma'am, because I took off running-
 

 [PROSECUTOR]: Okay, that's right.
 

 [BOWEN]:-as far as I know.
 

 [PROSECUTOR]: So you don't know; is that right?
 

 [BOWEN]: Yes, ma'am.
 

 We reject Defendant's argument that Bowen's testimony resulted in a violation of his due process rights. Defendant does not assert that he intended to call Bowen as a defense witness but was prevented from doing so by the State. Furthermore, the circumstances surrounding Bowen's agreement to testify as the State's witness did not result in Bowen testifying more favorably for the State than she otherwise would have.
 
 See
 

 Melvin
 
 ,
 
 326 N.C. at 190
 
 ,
 
 388 S.E.2d at 81
 
 . To the contrary, as the above-quoted portion of her testimony makes clear, her testimony was largely unhelpful to the State. Accordingly, Defendant has failed to show a due process violation.
 

 Conclusion
 

 For the reasons stated above, we conclude that Defendant received a fair trial free from error.
 

 NO ERROR.
 

 Chief Judge McGEE and Judge TYSON concur.
 

 [1]
 

 Defendant's alternative argument is that a fatal variance existed between his indictment and the evidence presented by the State at trial as a result of the inaccuracies discussed above. However, as the State notes, the Defendant did not raise this argument below. Therefore, he has waived appellate review of this issue pursuant to Rule 10(a) of the North Carolina Rules of Appellate Procedure.
 
 See
 
 N.C. R. App. P. 10(a)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.").